## Ex Parte T. C. Taylor.

*No. 641. Decided June 12.*

Contempt—Criticism of Judicial Proceedings—Jurisdiction.—Where, on proceedings on habeas corpus for a contempt of court, the alleged ground of contempt was, that relator had incited the publication in a newspaper of a criticism severely arraigning the action of the judge in a matter which had been heard before him, and it was made to appear that relator had no agency whatever in or knowledge of said publication until he saw it in print, *Held*, that the judgment of the court below, committing relator for contempt, is void for want of jurisdiction.

ORIGINAL APPLICATION for habeas corpus to the Court of Criminal Appeals.

The facts are stated in the opinion.

*Baker & Prendergast*, for relator.—The judgment for contempt is void for the want of jurisdiction, because the newspaper publication upon which the judgment for contempt is based and applicant committed, was about a cause not then pending, but one that had been tried and determined in chambers, and the court adjourned. Rapalje on Contempts, sec. 56; Cheadle v. The State, 110 Ind., 301; Dunham v. The State, 6 Iowa, 245; The State v. Anderson, 40 Iowa, 207; Stewart v. The People, 3 Scam., 395; The People v. Wilson, 64 Ill., 195; Story v. The People, 79 Ill., 45; Bayard v. Passmore, 3 Yates, 433; In re Bronson, 12 Johns., 460; Republica v. Oswell, 1 Dall., 319.

Bishop's Criminal Law, volume 2, section 26, defines constructive contempt as follows: "According to the general doctrine, any publication, whether by parties or strangers, which concerns a cause pending in court, and has a tendency to prejudice the public concerning its merits, and to corrupt the administration of justice, or reflects on the tribunal or its proceedings, or on the parties, the jurors, or the counsel, may be visited as contempt."

The definition of constructive contempt, it will be noted, relates to a cause pending; but whether the publication about a cause pending or past be contempt, under the common law, it makes no difference, in the light of the constitutional and statutory provisions of this State, and the circumscribed jurisdiction of the courts of this country.

The rule has been greatly modified, and the doctrine announced by Rapalje on Contempts, section 56, that a publication to be contempt

must be about a cause pending before the court, is now uniformly accepted.

Blackstone, volume 4, page 283, defines direct contempts as those "which openly insult," etc., meaning, of course, those offered within the presence of the court; and on page 285 he refers to a contempt which consists "in speaking or writing contemptuously of the court or judges acting in their judicial capacity."

The statute under which the court doubtless acted in the case at bar is article 1120, Revised Statutes of Texas, which provides: "The District Court shall have power to punish by fine not exceeding $100, and by imprisonment not exceeding three days, any person guilty of contempt."

It will be seen, by an inspection of the foregoing article, that it is silent as to when or under what circumstances fine and imprisonment for contempt may be imposed, whether for pending or past proceedings; but considering this statute in connection with the liberty of the press as guarantied by our Constitution, which provides, that "every person shall be at liberty to speak, write, or publish his opinion on any subject, being responsible for the abuse of that privilege; and no laws shall ever be passed curtailing the liberty of speech or the press." Const., art. 1, sec. 8.

Considering this statute in connection with article 636 of the Penal Code of Texas, which provides, "It is no libel to publish any statement respecting any legislative or judicial proceeding, whether they be in fact true or not, unless in such statement a charge of corruption is made against some person acting in a legislative or judicial capacity;" and considering further, that the real vice in such publications is the influence that they may have upon a cause pending, almost irresistibly forces the conclusion that such a publication must be about a cause pending in order to constitute it contempt.

The constitutional rights of the press, and the provision, "it is no libel to publish any statement respecting any legislative or judicial proceeding," seems to license the press beyond the reach of the courts in its criticisms of the proceedings of either of the co-ordinate branches of our government.

The judgment for contempt is void for the want of jurisdiction, because the particular judgment rendered was unauthorized by the evidence, in that it does not appear that applicant was guilty of any criminality whatever. Ex Parte Degener, 30 Texas Crim. App., 566.

No brief for respondent.

DAVIDSON, Judge.—It appears that, sitting in chambers on the habeas corpus hearing of the charge against Crockett King and others for the murder of Ed. Cash, Hon. L. W. Goodrich, judge of the Nineteenth Judicial District of the State of Texas, at Waco, Texas, on the 26th day of June, 1894, entered an order discharging all of the parties

charged, except one; that thereafter, on July 3, 1894, the People's Voice, a newspaper published in Gatesville, Coryell County, Texas, in which county the murder of Cash was alleged to have been committed, published an editorial criticism of the proceedings on the said habeas corpus hearing, severely arraigning the action of the said Hon. L. W. Goodrich, judge of the said district, on said hearing; that on the 6th day of July, 1894, the said Hon. L. W. Goodrich, judge aforesaid, caused to be entered an order for attachment, etc., of the persons of J. L. Goodman, for publishing, and T. C. Taylor and J. H. Arnold, for inciting and causing said publication; that, under said order, attachment was issued, and the parties attached, including the relator, were produced in court, before Hon. L. W. Goodrich, on July 9, 1894, to answer, in the terms of the attachment, showing cause why they should not be held in contempt because of such publication—the respondents Taylor and Arnold answering, and denying under oath that they, or either of them, incited or caused the said publication, or had knowledge of said publication until it was seen by them, respectively, in the newspaper aforesaid, and each pleading to the jurisdiction of the court in the premises.  On the hearing, on the same day, under this attachment, the respondents were held in contempt; and a fine of $100, with imprisonment for three days in the county jail, was imposed upon Taylor and Goodman, and a fine of $25 was imposed upon Arnold, and each of the respondents was committed to the custody of the sheriff for the enforcement of the penalties.  Inferentially, it appears that on the same day—July 9, 1894—the Governor of the State of Texas, by telegraph, directed the sheriff of McLennan County to suspend the enforcement of the judgment rendered.  It appears affirmatively that on the following day—July 10, 1894—the Governor, by proclamation, issued an unconditional pardon as to Goodman and Taylor, expressly remitting both the fines and the imprisonment assessed by the judgment, and directing their release.  The sheriff disregarding the pardon issued, and refusing to release the said respondents, the relator applied to W. L. Davidson, judge of the Court of Criminal Appeals, for writ of habeas corpus, who on July 11, 1894, awarded the writ, and, ordering the same returnable before said court on the 6th day of October, 1894, at Tyler, admitted the relator to bail in the sum of $300.

The relator seeks his discharge on four grounds:  First, that the judgment for contempt is void for want of jurisdiction, the cause in which the alleged contempt was committed not being there pending, but having been finally disposed of, and the session of the court in chambers having finally adjourned; second, that the judgment for contempt is void for want of jurisdiction, because under the proof it does not appear that the relator is guilty of any agency whatever in the commission of the acts alleged as contempt; third, that the relator, being an attorney at law, the court below had no power to assess for contempt the penalty of fine and imprisonment; fourth, that the pardon of the Governor, in the exercise of his power to remit fines and par-

don contempts, entitled relator to his discharge. These several propositions present questions of great interest, but none, save the second, which we conceive to be conclusive, need to be considered on this hearing. The contempt alleged against the relator is, that he "incited" the publication alleged as contempt, and that he "caused" the publication of the article alleged as contempt. To say the least of it, to uphold the jurisdiction of the lower court which rendered the judgment it did in this case, it should be made to clearly appear that, the publication being contempt, it was, as charged, incited or caused by the relator. So far from establishing this issue, the statement of facts, as agreed to and brought before this court, shows that the relator not only did not incite or cause the publication, but that he had no knowledge of its intended publication, or that it was published, until he read it in print. Inasmuch as the relator had no manner of agency in the publication, or in procuring the publication, of the matter alleged as contempt, this court must hold the judgment of the court below void for the want of jurisdiction, upon the principle which it asserted in Degener's case, 30 Texas Criminal Appeals, 566; "the commitment being against law," inasmuch as it commits "for matter for which, by law, no man ought to be punished"—that is, the relator in this case was committed for acts which, so far as the proof on the hearing shows, he did not do.

It is ordered that the relator be discharged.

*Relator discharged.*

Judges all present and concurring.