## Ex Parte John M. Duncan.

### No. 2139. Decided April 24, 1901.

**1. Examination of Candidate for Law License—Order of Court as to.**

Under provisions of article 256, Revised Statutes, upon the presentment of an application for permanent license to practice law, it is made the duty of the District Court to appoint a committee of practicing attorneys, naming them, to conduct the examination, and also to set a day for the examination of the applicant by said committee; the said committee to be notified accordingly. The order appointing the committee and setting the day for the examination must appear from the records to have been made as any other judicial order, and be complete within itself.

**2. Same—Disobedience of Said Order by a Member of the Committee—Contempt Proceedings.**

Where an order appointing a committee to examine an applicant for law license failed to fix the time for said examination, the order was incomplete within itself, and the defect was not cured by an oral statement of the judge to a committeeman that the examination would be held at a certain hour of the next day. Nor would a disobedience of such order by said committeeman be a valid and legal ground for the imposition of a fine upon him, and his arrest for contempt by virtue of an attachment issued under order of the court. To authorize such action on the part of the court, the order of the court, as rendered and recorded, must have been complete and perfect within itself.

**3. Same—Contempt—Jurisdiction.**

Where the court seeks to punish either by fine, arrest, or imprisonment, as for a contempt for disobedience of its order or command, such order or command must carry with it no uncertainty, but must be in the form of a command; and, when tested by itself, must speak definitely the meaning and purpose of the court in ordering. If the order or command be defective in this regard, the party is not bound to obey it, and an attachment issued by the court because of his failure to obey the same is absolutely void, and his arrest and enforced appearance under said attachment would confer no jurisdiction upon the court, either as to subject matter or as to the person, so as to authorize the holding him in contempt and imposing a fine upon him.

**4. Same.**

Where an attorney, appointed under an illegal and void order of the court to examine an applicant for law license, was, for disobedience of said order, arrested by attachment and brought before the court, he had the right to protest against the humiliation, unlawful arrest and seizure of his person; and, while thus in duress, to refuse to serve upon the committee; and where his manner and language was neither offensive nor discourteous to the court, but simply an exhibition of anger and the indignant protest against the proceedings, such conduct on his part would not form the basis for another proceeding and judgment against him for contempt committed in the presence of the court.

**5. Same—Contempt—Essentials to a Valid Judgment for—Habeas Corpus.**

The essential elements to a valid judgment for contempt are: (1) The court must have jurisdiction over the subject matter; (2) it must have jurisdiction over the person of the defendant; and (3) it must have authority to render the particular judgment rendered, and if either of these essential elements is lacking, the judgment is fatally defective, and a prisoner held under such judgment may be released on habeas corpus.

**6. Same—Judgment, etc., Not Conclusive.**

The judgment in a contempt proceeding is not conclusive upon the question of the authority of the court to render it. Nor is jurisdiction of the person and subject matter conclusive; but the authority of the court to render the particular judgment is the subject of inquiry, and if, upon a review of the whole record it appears that a judgment unwarranted by law was entered, the party thus placed in contempt will be released under the writ of habeas corpus.

**7. Same—Recitations in Judgment.**

The recitations in a judgment for contempt are not conclusive of the facts recited, but the same may be subject of attack in a habeas corpus proceeding; and it is permissible, upon such hearing, to go behind the record and probe into the very truth of the matter. Henderson, Judge, dissents.

FROM Smith County. Original application to the Court of Criminal Appeals for habeas corpus, and discharge from custody under a judgment of contempt.

The opinion states the case fully.

*Cone Johnson* and *T. B. Butler,* for relator.—Jurisdiction is of two kinds: First, the power to hear and determine the particular matter and to render some sort of judgment in the matter; second, power to render the particular judgment which was rendered. The power or right of the court to render the particular judgment which was rendered is as much a question of jurisdiction as is the power of the court to render any judgment in the matter. Ex Parte Degener, 30 Texas Crim. App., 566.

If the court attempt to punish as contempt an act which is in fact not contempt, the court has as much exceeded its authority or jurisdiction as if it, having no power to punish for contempt, should undertake to do so, or should undertake to punish for contempt a person over whom it has acquired no jurisdiction.

If the commitment be against law, as when made by one having no jurisdiction of the cause, or for a matter for which, by law, no man ought to be punished, the courts are to discharge such person by habeas corpus. Ex Parte Degener, supra.

A court undertaking to punish as contempt an act to which no contempt attaches, acts beyond its jurisdiction. Church, Habeas Corpus, sec. 152.

Personal liberty is of so great moment, that the judgment of an inferior court is not so conclusive but that the question of the court's authority to imprison the party may be reviewed upon habeas corpus. Degener case, citing Ex Parte Siebold, 100. U. S., 371.

If the judgment of contempt is harsh, excessive or unjust, the court,

upon habeas corpus, may discharge the party committed. Brown, Jur., sec. 109.

This is on the principle that although the court is clothed with power to hear the particular matter, it has no authority to act in such matter arbitrarily or oppressively, or to constitute contempt that which is in fact not contempt; and should it do so, it exceeds its jurisdiction. The same authority, Brown on Jurisdiction, holds that the facts showing such excess of authority may be shown upon the return of the habeas corpus. Brown, Jur., sec. 110.

Three essential elements are necessary to render a commitment for contempt valid: (1) Jurisdiction over the subject matter; (2) jurisdiction over the person committed. Originally these were thought to be all the essential elements to make such commitment valid and conclusive, but to these has been added the more humane essential element, to wit, (3) authority and right to render the particular judgment which was rendered. Degener's case, and cases cited.

Where the court granting the writ is not a court of co-ordinate jurisdiction, but one having appellate or supervisory jurisdiction over the court making the commitment, the power to examine into the facts of the commitment is more freely exercised.

The power of the courts of this State, with reference to matters of contempt, is by the statute limited to the infliction of punishment upon the person "guilty of contempt of such court."

Under this authority our courts are not clothed with power to make or prescribe contempts, but to punish only for actual contempts; and the very language of the statute implies that the act for which punishment is inflicted must have some element of "guilt" in it, for it says any "person guilty of contempt." Sayles' Civil Stats., art. 1101.

If, therefore, the court undertake to make an act contempt which is meritorious or rightful, or one which has no element of actual contempt in it, or which has no taint of guilt about it, the court exceeds its jurisdiction, and its judgment is without authority.

But under our statute of habeas corpus the inquiry into the circumstances of the commitment—the factum of contempt—is not properly a collateral attack; but our statute makes the writ of habeas corpus the proper and original proceeding for the release from restraint where the court making the commitment has exercised its power "in a manner or degree not sanctioned by law." Article 173 of our Code of Criminal Procedure provides: "The writ of habeas corpus is intended to be applicable to all cases of confinement or restraint where there is no lawful right in the person exercising the power; or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law."

This statute expressly confers upon this court the right upon habeas corpus to release relator if his commitment was the exercise by the court of the power to punish for contempt either in a manner or in a degree not sanctioned by law. Code Crim. Proc., arts. 154, 173.

The statute gives to the court power to determine in this proceed-

ing whether the power of the district judge was exercised in a manner or degree sanctioned by law. The court can only determine this matter by reviewing the action of the judge and by inquiring into the circumstances of the alleged contempt.

It is conceded by the State that the court may inquire into (and for that purpose may hear testimony) and ascertain if the court had jurisdiction of the relator, and that the recitals of the judgment may be contradicted, and that it may be shown that the court had no jurisdiction of the person, that is, that it may be shown that there "is no lawful right in the person exercising the power;" but our statute says that the writ is equally applicable to a case where the power, though it exist, is exercised in a manner or in a degree not sanctioned by law. The statute is therefore conclusive of the right of the court to hear and determine the question of contempt, whether in fact a contempt has actually been committed, and to hear testimony contradicting the recitals of the judgment. How else can the court determine whether the judge has used his power to punish for contempt in a manner or in a degree not sanctioned by law?

It is contended that if the judgment does not recite the facts constituting the alleged contempt, the court may hear testimony aliunde of the circumstances of the commitment; but that if the judgment recite the facts of which the alleged contempt consists, such judgment imports absolute verity, is conclusive and can not be contradicted. The court is not required in its judgment to recite the facts constituting the contempt. Such a judgment is sufficient if it adjudge the party guilty of contempt. We can conceive no reason why such a judgment is not just as sacred and as conclusive and free from attack as if the facts of the contempt were recited; as, after all, it is the judgment and the recital therein that the person is guilty of contempt that constitutes the adjudication and gives to the judgment all the verity and conclusiveness which it has. It would be reductio ad absurdum to say that if the facts be not recited the adjudication of the contempt is not conclusive, while if the court recite the facts it is conclusive. Suppose the court recite facts showing that it had jurisdiction of the person, may not this recital be contradicted for the purpose of showing that the court was without jurisdiction? Suppose the court recite facts showing the contempt, when in fact no contempt existed; in such case it is said that the recitals are conclusive, although, under the authorities, the court is without power to render that particular judgment and the court exceeded its jurisdiction in such case as much as in the case where it had no jurisdiction of the person. The absurdity will be seen when it is remembered that our statute provides that this court may release from commitment where the power to commit has been exercised in a manner or degree not sanctioned by law, that is, under circumstances where the commitment and punishment are not in consonance with the principles of justice.

Where the court, by arbitrary, unjust and unfair, or unlawful treat-

ment of the attorney, produces the occasion and provokes the attorney to the use of language in the assertion of his rights and in protest against such injustice which might otherwise be held to be disrespectful, his punishment as for contempt under such circumstances would be unjust, harsh and oppressive, and a grossly excessive abuse of the court's power to punish for contempt, and the exercise of the power both in a manner and in a degree not sanctioned by law. Ex Parte Kearby, 34 S. W. Rep., 963.

In this case the relator having rendered an excuse why he could not be present at the examination of the applicant, which excuse, according to the testimony of all, was not rejected or overruled by the court, and which, according to the testimony of some of the witnesses, was actually accepted by the court, the attempt of the court to impose a fine upon him for not being present, and the issuance of an attachment for relator and his arrest thereunder, were a gross and flagrant injustice to the relator, was unwarranted and illegal, and was an abundant provocation for the language used by relator in the assertion of his rights before the court; and the language used by relator in the assertion of his rights and in protest against the injustice done him being neither scurrilous, indecent nor boisterous nor profane, but moderate and parliamentary, under the circumstances, the imposition of a fine upon him and his commitment was the exercise of the power of the court in a manner and in a degree not sanctioned by law, and was arbitrary and oppressive.

For this injury done to relator in his person and property the Constitution says he shall have his "remedy by due course of law," and this remedy is by a writ of habeas corpus.

*R. W. Simpson,* District Attorney of the Seventh Judicial District, for respondent.—The only ground on which any court in this State will give relief on habeas corpus to a prisoner under conviction and sentence for contempt of another court, is the want of jurisdiction in the court, adjudging the contempt, over the subject matter or parties, or the want of power to render the particular judgment which was entered, such as the imprisonment for an offense to which no criminality attached or that is innocent or meritorious in its nature. Brown, Jur., sec. 98; Church, Hab. Corp., sec. 152; Ex Parte Degener, 30 Texas Crim. App., 566.

The proceedings to obtain relief by habeas corpus from a judgment of fine for contempt is a collateral proceeding to the judgment. Hurd, Hab. Corp., sec. 330; Ex Parte Degener, 30 Texas Crim. App., 566; Holman v. Mayor of Austin, 34 Texas, 668.

"The general good clearly requires and has therefore established the rule that domestic judgments of courts of general jurisdiction can not be attacked collaterally," unless absolutely void.

In collateral attack of judgment, evidence can not be admitted to contradict the recitals therein. The judgment "imports absolute verity," and the question of whether it is void must be determined by the record

itself.    Rap., Contempts, sec. 155; Freem., Judg., secs. 132-134; Ex
Parte Degener, 30 Texas Crim. App., 566; Williams v. Haynes, 77
Texas, 283; Treadway v. Eastburn, 57 Texas, 209; Guildford v. Lane,
49 Texas, 715; Fitch v. Boyer, 52 Texas, 337; Williams v. Ball, 52
Texas, 603.

When an application is made by a person desiring to obtain perma-
nent license to practice law, it is the duty of the court to appoint a
committee of three or more practicing attorneys to examine said appli-
cant and set a day for the examination.   Sayles' Civil. Stats., art. 256.

The District Court shall have power to issue all writs necessary to
the enforcement of its jurisdiction.   Sayles' Civil. Stats., art. 1107.

That the court had the authority, and that it became its duty to
appoint a committee to examine the applicant for law license will, we
presume, not be denied.   And that it was in the power of the court to
enforce obedience to its order would by implication follow the duty to
appoint the committee, had not the statute in article 1107 especially
conferred the power.   But as we view this case it is unnecessary for
the court to pass upon this question, because the factum of contempt
was not the refusal to serve on the committee, but the language used
by relator to the court, and the manner of its use, was, in the judgment
of the court, made the ground for the fine for contempt.

Now, as to whether the factum of contempt as set out in the judg-
ment of the District Court was innocent or culpable, we feel that it is
unnecessary for us to discuss.   This honorable court is by law made
the judge of this, in passing upon whether the court exceeded its juris-
diction, and no suggestion of ours would probably change its judgment
on the facts.

But the law interposes a rule to govern the courts in passing on
the factum of contempt, which is clearly stated in Thompson on Trials,
sections 141, 142, and approvingly quoted in Ex Parte Degener, above,
to be, "That every superior court of record and every legislative body
of a sovereign State is the exclusive judge of the contempt committed
in its presence or against its process or authority, and forbids all inter-
ference on the part of other tribunals, by means of writs of habeas
corpus or otherwise, except in plain cases of excess of jurisdiction."
Now, if the court should hold that the facts set forth in the judgment
were sufficient on which to base a punishment for contempt, then we
respectfully show that under the settled authority in this State your
honors can proceed no further with this hearing.

Both in civil and criminal judgments is the rule announced that
they are absolutely incontestable in a collateral proceeding, such as
this, if the court shall first find that jurisdiction of the subject matters
and parties attached.   In Treadway v. Eastburn, 57 Texas, 209, the
court said if their recitals in the judgment show uncontradictedly that
the court had jurisdiction over the subject matter "the mere rendition
of the judgment would of itself 'import absolute verity.'"   And again,
in Merchison v. White, 54 Texas, 78, the court said, "It is believed

that a careful analysis of the cases on this subject will show that, in a collateral proceeding, the only contingency in which a judgment of a domestic court of general jurisdiction of the subject matter and the person can be questioned is where the record shows affirmatively that its jurisdiction did not attach in the particular case." And again in the same case this language is used: "This question of such a procedure (i. e., collateral attack on judgment) must be tried by the recitals in the record itself and the presumptions arising therefrom, 'if they show a case of jurisdiction, then in a collateral proceeding, upon grounds of public policy the record purports absolute verity and is conclusive."

The foregoing are expressions of the court as to civil judgments, but the same rule prevails with regard to criminal. In the case of Degener, one of the leading cases in Texas on this question, the court held as follows: "The writ of habeas corpus is a collateral remedy, and under the well established rule that a judgment of a court of competent jurisdiction can not be collaterally impeached, it results that, no question of jurisdiction being raised or involved, a conviction or commitment for contempt can not be reviewed by means of this writ, for it is well settled that an order for committal for contempt is in the nature of a judgment, and the person committed thereunder is committed in execution. If, therefore, the court had jurisdiction of the person of the defendant and of the subject matter out of which the alleged contempt arises, he can no more get relief on habeas corpus than he could if his committal had been in execution of a judgment founded on a verdict of an ordinary prosecution for crime. If the court had jurisdiction, the rule making every superior court of record or legislative body the exclusive judge of contempts against its own authority and dignity, closes the door to a review by this writ, except in such cases where excess of jurisdiction is clearly apparent.

We submit that no more dangerous doctrine could be announced by this court than that the solemn judgment of a court of record could be assailed by the affidavits of bystanders in manner attempted in this case. While in Ex Parte Degener and Ex Parte Kearby and Hawkins it appears from the opinions that affidavits were taken and presented to this court, yet the court does not intimate its opinion as to whether it was proper, and the language in the Degener case above quoted absolutely precludes such a procedure, in fact we are unable to find any case where evidence was permitted to impeach the recitals in the judgment of a court of record, acting within its jurisdiction, but all hold that public policy demands, and presumptions arising from judgments of courts of competent jurisdiction, enforces all other courts, in collateral proceedings, to treat the recitals therein as absolutely true.

And again, it would be equally as dangerous to set the precedent of overturning a judgment of contempt by a court of competent jurisdiction, except in plain cases of excess of jurisdiction. The question of contempt must necessarily be lodged in the discretion of the tribunal

before whom the contempt is committed, and the power of the tribunal to enforce its dignity and compel respect should only be interfered with in cases of flagrant violations of justice and unwarranted encroachments on the liberty of a citizen.

*Rob't A. John,* Assistant Attorney-General, also for respondent.

DAVIDSON, PRESIDING JUDGE.—This is an original application for the writ of habeas corpus. Relator was appointed one of five attorneys to examine an applicant for admission to practice law. The order appointing this committee was entered on March 16th. The order failed to designate any time when the examination should occur. On the 16th of March, relator being in the court room, the presiding judge asked him if he could serve upon the committee, and was informed, if it did not occur at night, he could do so, but if at night it would be impossible for him to attend by reason of the fact that he lived remote from the court house, and could not leave his wife alone at night. The district clerk states the judge then informed relator that he would appoint him anyway, and if he could attend to do so, and, if not, "of course I will excuse you." On the night of the 20th of March all of the committee failed to attend except Hon. Cone Johnson. The judge fined the absent attorneys $25 each, and ordered the clerk to issue attachment. These orders were not entered of record, but the attachment was issued, and the next morning was served upon relator, Duncan, in his office by two deputy sheriffs, who immediately escorted him to the court room, where he took a seat in front of the judge's stand. A few minutes afterwards Judge Russell, the district judge, took the bench, and said, "Gentlemen, proceed with the examination." Relator arose and said, "I decline to serve on this committee." The judge replied, "Judge Duncan, I can not excuse you;" to which relator replied: "I can not help that. I will not serve. I told the court at the time of my appointment that I could not serve on an examination committee to meet at night, and gave the court my reasons for it. Now, I have been arrested at my office this morning and brought over here under arrest by officers, under the order of this court, for failing to be present last night. I have always treated this court as a gentleman, and I expect to be treated or must be treated by the court as a gentleman, if not as a member of the bar." The court replied, "I will not sit here and allow you to reprimand the court, and I will fine you if you do not desist from it." "I then took my seat, saying, 'Well, if you fine me, and I have the money to pay the fine, I can pay it; if not, I will have to go to jail.'" The court then said, "Mr. Clerk, enter a fine of $50 against Judge Duncan for contempt of court." It is shown by the evidence that it has never been the practice at that court, or in that district, for the judge to compel members of the bar to serve on such examining committees, and never before, in the knowledge of witnesses, was a fine assessed against, or an attachment issued for, a member of such committee who failed to attend; that the custom was either to

postpone on account of the absence of one or more of the committee, or proceed with the examination by the appointment of other members of the bar. Relator further states that he had no intimation in any way from the judge at any time, after stating his reasons for not being able to attend the meeting of the committee at night, that he would still be expected to attend or be fined or attached; and that he had no notice or knowledge, or any reason to suspect, until the morning of the 21st, that he was fined, or was to be fined or arrested, and that the facts recited in the judgment of contempt rendered against him were placed there without his knowledge, and that he had no opportunity to see that the facts were correctly stated in the judgment; that it was wholly ex parte, and was prepared entirely under the direction of the trial judge.

This case involves and turns upon the question of jurisdiction. If the jurisdiction of the court properly attached to the person of the relator and the subject matter of the contempt, and the facts showed contempt, then this writ should be refused, and the relator remanded. Article 256, Revised Civil Statutes, provides: "During the term of the District Court, upon application in writing of any person desiring to obtain a permanent license to practice as an attorney and counsellor at law in the courts of this State, the court shall, as soon as convenient, appoint a committee of three or more practicing attorneys of good standing, and set a day for the examination of the applicant, on which day the committee so appointed shall in open court proceed to examine the applicant; and if they or a majority of them and the court are satisfied of his legal qualification, a report of that fact shall be made." The district courts of this State being courts of record, every order made by such court must be entered of record. Upon the presentation of the application it becomes the duty of the court to appoint a committee, naming them; and this appointment, together with the day appointed, must appear from the records to have been made as any other judicial order must so appear. Until this has been done and the members of such committee have been notified, the court has no power to compel any member of the committee to proceed with the examination of such applicant. The question then presented is, did the court have the power to issue the attachment to compel the appearance of the relator? If it did, it must be held relator was in contempt and the court had the power to punish not only for disobedience of its order originally made, but to enforce its orders subsequently made by fine or imprisonment, and to punish for refractory conduct on the part of the relator. If, on the other hand, it had no power to compel the attendance of the relator by the attachment as issued, then the appearance of the relator being an enforced appearance, without sanction of law, the court had no power to punish, by either arrest under the writ of attachment or for the subsequent acts of relator while in such duress in questioning or demanding in a respectful manner the right of the court in ordering his arrest, or in seeking to compel him to serve on the committee. It is conceded from the evidence before us that the

application to be examined for license to practice as an attorney and counsellor at law was filed by an applicant, in which application was made for a committee of practicing attorneys for the purpose of examination. That on the 16th of March an order was made and entered of record on the minutes of the court appointing relator and four other attorneys as such committee. But from this order, which is also in evidence, it is observed that no day was set or mentioned when the examination should occur. However, on the morning of the 16th of March, while relator was in the court room, the district judge inquired of him as to whether he could serve on said committee on the 20th of March. He replied, "I could not serve on any committee to examine an applicant at night; that I could not come down town at night, on account of living so far out, as my wife would be left alone should I leave." To this relator testifies that he heard no reply, but is sure that the district judge did not dissent. The district clerk, however, states that the judge replied to relator, "Well, judge, I will put you on (or leave you on), as it might be that you can come down; and, if not, of course I will excuse you." These facts are undisputed. Neither the order of the court, as made of record, nor the request of the judge to relator to be present and take part in the examination, can form the basis for this proceeding in contempt. The order, to have been the subject of disobedience, must have been complete and perfect within itself. It was not complete. No attorney, from an inspection of the order, could say, without aid from other evidence, at what time the examination would be held, and, as no time was fixed by it for the examination, it can not be said that relator in any way disobeyed such order. True, taken in connection with the oral statement of the judge, relator might have known that the examination would be held at 8 p. m. on the 20th of March, but in cases of this kind this is not sufficient. It is the disobedience of the order of the court as rendered and recorded which must constitute the basis of this proceeding. Stress is laid upon this from the fact that it is this order which is claimed to have first been disobeyed, and which gave rise to the subsequent proceedings. Nor can it be said, assuming that it is within the power or province of the judge to aid a recorded order by oral statements aliunde such record, that the request of the judge to relator Duncan was in any sense such order or command, or so regarded by the judge at the time, as to be the subject of disobedience so as to form the basis of a contempt proceeding. It was at most a mere request, and evidently so understood at the time by the judge, relator, and the district clerk; and the manner in which the judge informed relator Duncan, if he could not comply with it, would form the basis of relator's belief that he was excused from attendance. Where the court seeks to punish either by fine, arrest, or imprisonment for the disobedience of an order or command, such order or command must carry with it no uncertainty and must not be susceptible of different meanings or constructions, but must be in the form of a command; and when tested by itself must speak definitely the meaning and purpose

of the court in ordering. There being no such order as relator was required to obey, and there being nothing in his conduct remotely bringing him within contempt, the action of the judge in ordering the writ of attachment was absolutely void and without jurisdiction. His arrest was for no offense, either actual or constructive. The court, so far as relator was concerned, was without jurisdiction as to the subject matter or person, and had no authority to impose the fine of $25 originally imposed, whether entered of record or not.

But it is contended that the court rightfully punished relator by a fine of $50 when brought before the court in arrest by virtue of the writ of attachment on the 21st of March; that here the contempt was committed in the presence of the court by words spoken by relator and from his manner; and that the facts recited in the judgment were conclusive. The writ of attachment being void because issued without authority, the court at no time rightfully obtained jurisdiction over his person; his presence in the court room was illegally enforced, and he had the right in a respectful mannner and by decorous language in the presence of the court to protest against the unlawful arrest and seizure of his person, and while thus in duress to refuse to serve upon the committee. If the original order was not sufficient to require obedience, certainly no illegal arrest under such order would add weight, strength, certainty, or validity to it; and if the court had no power to render the particular judgment against relator, in aid of which the writ of attachment was issued, certainly the jurisdiction of the court could not be so enlarged when the jurisdiction was originally wanting. There is nothing in evidence before this court, outside the facts recited in the judgment entered on the 21st of March, which shows that relator made use of any language in any way discourteous or which could have been, under the circumstances, construed in any other way than an indignant protest of an unoffending citizen against the unlawful arrest and humiliation to which he had been subjected, without legal authority; nor was his manner offensive or discourteous, but upon the contrary all the evidence (the facts recited in the judgment excepted) show that neither his language nor manner was in any respect offensive, such as to form the basis for the proceeding in contempt. A judgment which is void is conclusive of nothing, and may be the subject of inquiry in a collateral proceeding. The recited facts therein are not binding in any way, nor for any purpose. Nor can the court make contempt of that which is not contempt (Church on Habeas Corpus, section 152), and every attempt to do so would be in excess of authority or jurisdiction, as much so as if the court had no authority or power to punish for contempt, either in relation to the person or subject matter. There must be contempt in order to justify punishment for the offense. "There are three essential elements necessary to render conviction valid. These are, that the court may have jurisdiction over the subject matter, the person of the defendant, and the authority to render the particular judgment. If either of these essential elements is lacking, the judgment is

fatally defective, and the prisoner held under such judgment may be released on habeas corpus." Ex Parte Degener, 30 Texas Crim. App., 566; Ex Parte Taylor, 34 Texas Crim. Rep., 591; Ex Parte Tinsley, 37 Texas Crim. Rep., 517; Ex Parte Kearby and Hawkins, 35 Texas Crim. Rep., 531; Ex Parte Kearby, 35 Texas Crim. Rep., 634; Brown on Jur., secs. 109, 110; Ex Parte Lake, 37 Texas Crim. Rep., 656.

"Some of the older authorities regard jurisdiction of the matter and the prisoner sufficient to give the court jurisdiction to pronounce the judgment which could not be successfully assailed by this writ. The rule now, supported by high and abundant authority and excelent reason, is that the court must not only have jurisdiction over the person and the matter, but authority to render the particular judgment. The judgment is not conclusive upon the question of the authority of the court to render it. That, as well as any other matter which would render the proceedings void, is open to inquiry." 7 Am. and Eng. Enc. of Law, 2 ed., p. 36; People v. Lipscomb, 60 N. Y., 559; People v. Oyer and Term. Ct., 101 N. Y., 245, 54 Am. Rep., 691; Ex Parte Degener, 30 Texas Crim. App., 566; Holman v. Austin, 34 Texas, 668; Ex Parte Fisk, 113 U. S., 713.

. Jurisdiction of the person and subject matter are not alone conclusive, but the authority of the court to render the particular judgment is the subject of inquiry; and if, upon a review of the whole record, it appears that a judgment unwarranted by law was entered, the party thus placed in contempt will be released under the writ of habeas corpus. Same authorities. Among other jurisdictional defects is also found the following: the infliction of punishment in excess of that allowed by law. Ex Parte Edwards, 11 Fla., 174; Haines v. Haines, 35 Mich., 138; People v. Lipscomb, 60 N. Y., 559; Matter of Patterson, 99 N. C., 467; Matter of Walker, 82 N. C., 908; Commonwealth v. Newton, 1 Grant's Cas. (Pa.), 453; In re Pierce, 44 Wis., 411. As also where the commitment is for an indefinite time. Ex Parte Kearby and Hawkins, 35 Texas Crim. Rep., 531; Yoxleyski's case, 1 Salk., 351; Rex v. James, 5 B. & Ald., 891, 7 E. C. L., 292; Cramantie v. Bladen, 85 N. C., 211; Matter of Hammel, 9 R. L., 248; In re Leach, 51 Vt., 630; People v. Pirfenbrink, 96 Ill., 68; State v. Myers, 44 Iowa, 580; Bickley v. Commonwealth, 2 J. J. Marsh (Ky.), 575; Ex Parte Alexander, 2 Am. L. Reg., 44; Matter of Watson, 3 Lans. (N. Y.), 408; Commonwealth v. Roberts, 4 Pa. L., 126.

If the judgment is not conclusive upon the question of the authority of the court to render it when the facts are not therein recited, then the recitation or partial recitation of the facts in such judgment, and upon which it is predicated, will not add anything more to its sanctity than if unrecited, and such judgment is as much the subject of attack as if such facts were entirely omitted. If the unrecited facts would not or do not authorize the particular judgment rendered, then the mere recitation of the same facts in the judgment will not make it valid, nor add strength or vitality to it. If the judgment is void, in

either event, it is the subject of inquiry in a habeas corpus proceeding; and it must be void to be so attacked. Authorities supra.

In Parker's case, 35 Texas Criminal Reports, 12, this question was expressly decided. The judgment in that case recited as a fact that the court adjourned on May 14, 1892, and it was attacked on habeas corpus on the ground that this recitation was false, in that the court as a matter of fact did not adjourn on May 14th, but did adjourn after 12 o'clock at night of said day, which rendered the judgment void, because said court by law was necessarily terminated at midnight of said day. The contention was that the verdict was returned into court after 12 o'clock at night, and on this issue the case was tried by this court. If the verdict was returned after 12 o'clock at night, it was void, because, as stated above, the term of the court had necessarily terminated at the hour of midnight, and before the verdict was rendered. The recitation of fact in the judgment, if true, constituted the verdict a legal one, and the judgment valid. It was contended in that case, as it is in this, that the recitation of the fact in the judgment was conclusive, and not subject to attack in the habeas corpus proceeding. This court, however, held otherwise, and that it was permissible "to go behind the record, and probe into the very truth of the matter," etc. Judge Henderson, delivering the opinion of the court, uses this language: "Notwithstanding the recital in the judgment in this case, we hold that it is competent, under the writ of habeas corpus, to go behind the record, and probe into the very truth of the matter, as to whether an act purporting to have been done during the term was in fact done during the time recited by the record." See, also, Ex Parte Juneman, 28 Texas Criminal Appeals, 488; White's Annotated Code of Criminal Procedure, section 98, sub-sections 6, 7; also sections 130 and 131—for collated authorities, as well as the authorities cited supra. After hearing the facts in that case, the court sustained the judgment of the trial court. The Parker case, then, is authority for the further proposition that we will hear the facts on controverted issues of this character, and where there is a conflict in the evidence, which may or may not support the judgment, and there is sufficient evidence to support the judgment, that we will not disturb the ruling of the trial court. The writer did not participate in the decision of the Parker case, as will be seen by the report of that case. That case is decisive against the State's contention that the recitation of the facts in the judgment is conclusive, and can not be attacked on habeas corpus, and that case but follows the unbroken line of decisions in this State since Ex Parte Degener, supra. The same rule obtains as to orders, etc., of the court. See Ex Parte Lake, 37 Texas Crim. Rep., 656.

The order appointing relator one of the committee to examine the applicant for license to practice law was invalid, for reasons already stated, and was therefore nonenforcible. The fine of $25 sought to

be imposed was equally invalid, for reasons already given. Ex Parte Kearby, supra. The warrant by which he was arrested and brought into court was also void for want of authority for its issuance, there being no valid judgment or order for its support. Hence the refusal to act on the committee was not contempt. Relator had the right to protest against the illegal arrest, under the circumstances, and the mere fact that he may have exhibited anger or indignation at the unwarranted arrest did not constitute contempt. We wish to say that the power of the court is official—judicial, and not personal—and the relations of court and attorney are correlative. Courts may, will, and should enforce judicial power and functions when necessary; yet this must be done in a manner sanctioned by law, and in consonance with judicial dignity, and with due regard to the rights of parties to be affected. Attorneys are bound and will be held to obey legal orders of courts, yet the court should invoke its judicial authority under the law and in obedience thereto. The relationship of courts and attorneys, bench and bar, are reciprocal, and each, in their proper sphere, is clothed with powers, rights, and privileges which are to be recognized and respected by the other. These relations should be recognized and respected alike by bench and bar, and, being carefully kept in view and followed as rules of action and conduct, will avoid friction. The judgment, being void, should be set aside, and the relator discharged; and it is so ordered.

*Relator discharged.*

April 30, 1901.

HENDERSON, JUDGE (dissenting).—I do not indorse the reasoning of the majority of the court, nor do I agree to the conclusion reached; and inasmuch as the matters involved are of importance, and as the opinion makes a radical departure in our jurisprudence, I deem it proper to express my views on the question involved. The following is a brief statement of the case. The Honorable J. G. Russell, judge of the District Court of Smith County, during a sesssion of his court, found relator, John M. Duncan, guilty of contempt in the presence of the court, and had entered against him the following judgment: "Ex Parte Hec. F. McCord. March 21, A. D. 1901. Whereas, on March 16, 1901, in the above styled cause, wherein said Hec. F. McCord applied for license to practice law in all district and inferior courts of this State; and whereas, on the said March 16, 1901, this court appointed S. A. Lindsey, J. M. Edwards, Cone Johnson, T. B. Butler, and John M. Duncan as a committee to examine said applicant on Wednesday, March 20, 1901, at 9 o'clock p. m. of said day; and whereas, at said time only one of said committee appeared, to wit, Cone Johnson; and whereas, upon the failure of said other members of the committee to appear, the court ordered the clerk of this court to issue an attachment for said J. M. Edwards, S. A. Lindsey, T. B. Butler, and J. M. Duncan to compel their attendance to examine said applicant

at 9 o'clock a. m., March 21, 1901; and whereas, at said time the said
John M. Duncan apeared in open court, and said to the court, in an
angry manner, that he declined to serve on said committee, and, upon
the court insisting that he serve on said committee, he, said Duncan,
said he proposed to be treated like a gentleman, and not have an attach-
ment served upon him to compel his attendance, and that he treated the
court like a gentleman, and that the court had to treat him as one, and
the court said that he would enter a fine against him for said conduct
and language, and thereupon said Duncan replied that the court could
fine him, and that if he didn't have the money to pay it with he could
go to jail: It is therefore considered by the court that said John M.
Duncan, by reason of above conduct and words, is in contempt of this
court, and that he be fined in the penal sum of $50. It is therefore
ordered, adjudged, and decreed by the court that said John M. Duncan
be, and he is hereby, fined in the penal sum of $50, and that the State
of Texas do have and recover of said John M. Duncan the said penal
sum of $50, and the clerk of this court is hereby ordered to issue a
warrant, directed to the sheriff or any constable of Smith County, Texas,
commanding him to arrest the body of the said John M. Duncan, and
commit him to the jail of Smith County, Texas, in default of the pay-
ment of said fine; and it is further ordered that execution may issue
against the property of the said John M. Duncan for the amount of
said fine and costs." From that judgment relator sued out an original
writ of habeas corpus to this court, and says that he ought to be dis-
charged from the judgment of contempt entered against him, because,
as he insists, the District Court had no power to render the particular
judgment which was rendered; that is, that his acts and conduct in the
District Court room were not a contempt of court. I do not under-
stand him to claim that the matters as adjudicated were not a con-
tempt, but he proposes to contradict the recitals on that judgment,
and also to show that other things happened anterior to the judgment
which stripped his conduct of the element of contempt. And, in order
to support his contention, he has brought to this court a number of
affidavits, principally from members of the bar, contravening in some
respects the recitals of the judgment, as also showing other matters
dehors the record. For a fuller recital of the facts, see opinion of
the court. A majority of the court, as I understand it, agree to his
contention; and it seems to me they go further, and hold that the court
did not have jurisdiction of his person.

Inasmuch as it occurs to me that the court in its opinion has over-
looked certain well-recognized principles of the law which pertains to
contempts in the presence of the court, and the power of this court
on habeas corpus to examine into and review the action of the court
adjudicating contempt, I deem it proper, at the outset, to state briefly.
the principles which govern such cases.

All courts of general jurisdiction have the inherent power incident
to their very existence as courts to punish contempts committed in

their presence. Ex Parte Degener, 30 Texas Crim. App., 572; Ex Parte Terry, 128 U. S., 306, 9 Sup. Ct., 77, 32 L. Ed., 405; Church, Hab. Corp., sec. 309; Rap., Contempts, sec. 1. In this State, as to attorneys at law (who are regarded as officers of the court), the power to punish for contempt is vested in the courts by statute. Rev. Civil Stats., art. 262. In all cases of contempts in the presence of the court, the judge bases his action on his own personal knowledge; that is, the judicial eye witnessing the act. The judicial mind comprehends all the circumstances of aggravation, provocation, or mitigation, and his judgment does not require any extraneous support to render it effective. Crow v. State, 24 Texas, 12; Ex Parte Terry, 128 U. S., 289, 9 Sup. Ct., 77, 32 L. Ed., 405; In re Wood, 82 Mich., 75, 45 N. W. Rep., 1113; Ex Parte Wright, 65 Ind., 504; Middlebrook v. State, 43 Conn., 257; State v. Woodfin, 27 N. C., 199. According to some of the authorities and in consonance with the better practice, the court in finding a contempt should adjudicate the facts constituting such contempt. 4 Enc. Pl. and Prac., p. 798, and note 2 for authorities; Church, Hab. Corp., sec. 316, and note. In this State it is expressly held that the judgment must recite the facts constituting the contempt, and the commit-. ment must also contain such facts. Ex Parte Robertson, 27 Texas Crim. App., 628; Ex Parte Kearby, 35 Texas Crim. Rep., 531; Id., 35 . Texas Crim. Rep., 634. While the writ of habeas corpus is a remedy in matters of contempt, it is a collateral attack on the judgment of the court finding the contempt, and it is the received doctrine that courts, under the writ, will not act as appellate tribunals to review errors. Jordan v. State, 14 Texas, 436; Ex Parte McGill, 6 Texas Crim. App., 498; Rap., Contempts, sec. 157; Ex Parte Renshaw, 6 Mo. App., 474. It is conceded, however, that courts of last resort exercise an enlarged jurisdiction—that is, greater than courts of co-ordinate jurisdiction with reference to the judgment of each other—and may ascertain the facts which render the judgment of contempt void for want of jurisdiction.

As a general proposition, before the court will exercise jurisdiction to discharge a party on habeas corpus from a contempt proceeding in another court, the judgment must be void for want of jurisdiction over the subject matter or over the party. In some jurisdictions courts will inquire whether the court had the power to render the particular judgment it did; that is, whether the matter was in fact a contempt, and our own courts have adopted this doctrine. Ex Parte Degener, 30 Texas Crim. App., 572.

In the United States courts, and in most of our State courts, the judgment of a court finding a party guilty of contempt imports absolute verity, and can not be questioned or contradicted in its findings on writ of habeas corpus by any other tribunal. Ex Parte Terry, 128 U. S., 289; Ex Parte Stearns, 77 Cal., 156; Ex Parte Ahmen, 77 Cal., 198; Ex Parte Acock, 84 Cal., 50; Whitten v. State, 36 Ind., 311; Smith v. McClendon, 59 Ga., 523; Ex Parte Bergman, 3 Wyo., 396;

People ex rel. v. Hinckly, 96 Ill., 68; Church, Hab. Corp., secs. 316, 317, and notes, secs. 336, 340; Rap., Contempts, 155. The general rule as to the impeachment of judgments in a collateral proceeding is the same in this State. Fitch v. Boyer, 51 Texas, 336, and authorities there cited. Here, however, this question has never been, as I understand it, decided as to matters of contempt. In Degener's case it does not appear that the judgment recited the facts constituting the alleged contempt. If it had so found, as to that particular matter, the court would have simply held that the facts therein recited did not constitute a contempt. It will be safe to say that in matters of jurisdiction which render the judgment absolutely void, our courts hold that the fullest latitude of investigation will be allowed. This is what I conceive to be the doctrine of Parker's case, 35 Texas Criminal Reports, 12, which involved the question whether or not the judgment was rendered in term time.

Applying these well recognized rules of law to the question here involved, let us see how the relator stands as to the judgment of the court finding him guilty of contempt. I take it that no one will seriously contend that the District Court did not have jurisdiction of the subject matter at the time this contempt arose; that is, authority to appoint a committee of attorneys to examine the applicant McCord for license to practice law, and to require their attendance and service. It is contended, however, that the jurisdiction did not properly attach, because no time was fixed in the order; but the parties were present, including the relator, and knew as to the time set, and this at most was a mere irregularity. It may be conceded that the court did not have authority to order an attachment for the relator on his failure to be present at the examination on the night of the 20th of March, and that he was illegally ·attached and brought before the court on the morning of the 21st of March; but when he was brought into the presence of that tribunal he·was then before the court in regular session, and the court could require of him to discharge the duty, which had previously been imposed on him as an officer of the court, of examining the applicant for license. It occurs to me he could no more decline to join the committee and make the examination than could a witness in a case pending in court who had been legally attached on an order of the court, when brought before it, refuse then to testify as a witness. Ex Parte Ahmen, 77 Cal., 201, and authorities there cited. Suppose a witness in such case should not only refuse to testify, because he had been brought into court under an illegal process, but should proceed to bandy words with the court, to tell the court that it must treat him as a gentleman, etc. This, according to the judgment of the court, is what the relator did. He peremptorily refused to go on with the examination. He told the court that he proposed to be treated as a gentleman, and not have an attachment served upon him to compel his attendance; that he treated the court like a gentleman, and that the court *had to treat* him as one. Not only so, he did this in an angry man-

ner. If this was not a contempt of court, then what was it? I under-
stand, however, the majority opinion concedes that the judgment recites
a contempt, but proposes to permit this to be controverted and overcome
by affidavits of bystanders, agreed to be used as evidence by the Assistant
Attorney-General, as to what actually did occur, and also by affidavits
as to what had previously occurred, which it is claimed stripped the
conduct of the relator at the time of all contempt. If the first propo-
sition be correct, then we have this strange anomaly (1) that the court
is the judge of contempts committed within its presence; (2) that it
is required, under the decisions of this court, to recite its findings of
contempt in the judgment; and then the facts so found and adjudicated
can be controverted and overcome by evidence presented in a collateral
proceeding for the first time in this court. This is not only making
of this court a court of review, but a court for the trial of matters of
contempts de novo, and that on ex parte affidavits. I am not willing
to give my assent to any such doctrine, and if the views expressed in
the majority opinion shall become the settled law in this State, it will
emasculate the courts of all power as to contempt.

While the judgment finding a contempt may not be contradicted
in its recitals of fact, extraneous facts explanatory of the judgment
and circumstances surrounding it, not in contradiction thereof, may be
shown; and I am willing to go to this extent, because I believe it is
in accord with sound principle and the authorities on the subject.
Cudday, petitioner, 131 U. S., 280; Church, Hab. Corp., sec. 366, and
notes. These environments or antecedent facts, so far as I have read
the affidavits, only show there was some misunderstanding as to whether
or not relator was excused or would be excused from the examining
committee, which involves the illegality of the attachment issued on
the 20th of March, and which brought him into court on the 21st of
March. But, as stated before, it does not matter how he was brought
into court; the court then had jurisdiction of him, and he was bound
to be respectful to the court. But even if, in violation of all precedent,
it should be held that the recitals in the judgment itself of the facts
constituting the contempt can be contradicted, then I maintain they
have not been contravened. I take it that, if the record does not speak
the truth, then the affidavit of the relator would show clearly wherein
it was false. It will be noted in this affidavit the relator does not
claim that the court excused him from serving on the committee, but
merely says, "I told the court at the time of my appointment that I
could not serve on an examining committee to meet at night, and gave
the court my reasons for it." He admits in his affidavit, as is recited
in the judgment, his refusal to proceed with the examination. While
not disclaiming anger, as is adjudicated by the court, he says he was
indignant at his treatment; nor does he deny bandying words with the
court on the occasion. The court finds that he stated the court had to
treat him like a gentleman, while he states that he expected the court
to, or the court *must* treat him as a gentleman. If this affidavit con-

tains any essential variance as to the facts adjudicated by the court, then I fail to see it. I would not in this respect be understood as holding that, where a member of the bar or others may be illegally brought before the court, they have not the right at the proper time in a respectful manner to ask an explanation of the court as to the reasons which caused such action, and of uttering, if need be, a respectful protest; but I do not believe it accords with the dignity of the courts, and the respect in which they should be held, that their authority should be defied in threatening and menacing language and in angry tones. For aught that appears, if relator in the first instance had inquired of the court as to why he had been attached, and had done this in a respectful manner, the court would have either heard him then or have arranged to hear him subsequently. But it does not occur to me, from his own statement, that this was his conduct. On the contrary, in every essential respect it accords with the judgment of the court; and certainly it must be held, if the judgment of the court finding the contempt is to be nullified and destroyed by some other tribunal, it must be upon a clear case, showing that the matter could not under any circumstance constitute a contempt.

The majority opinion goes further than any case of which I have any knowledge. Degener's case, supra, went to the extent of holding that, where the judgment was silent as to the facts constituting a contempt, same might be inquired into, and if ascertained that they could not under any circumstances constitute a contempt, the court would hold the judgment void on the ground that the court did not have the power to render the particular judgment it did. But this case goes further and authorizes in a collateral proceeding the action of a court adjudicating the facts constituting a contempt to be contradicted by evidence dehors the record, and although the affidavit of the relator in effect does not contradict the recitals of the judgment, still they hold that the judgment is void and of no effect. That is, it is held relator had the right to defy the authority of the court in threatening and menacing language, and to justify his action on the ground that he had been brought there illegally. I believe in the rights of the American citizen; I believe in the dignity and manhood of the members of the legal profession; but I believe in the majesty of the law; and the rights, whether of life, liberty or property, and whether assailed by the illegal acts of government or by the lawlessness or violence of the individuals, will be best upheld and safeguarded by preserving the authority of the courts—for upon these depends the very existence of the tribunals themselves. That a judge here and there may act corruptly and abuse his high prerogative, is no reason why courts should not possess the power to adjudicate contempts committed in their presence. "Wherever power is lodged, it may be abused; but this forms no solid objection against its exercise. Confidence must be reposed somewhere, and, if there should be an abuse, it will be a public grievance for which a remedy may be applied by the Legisla-

ture, and is not to be devised by courts of justice." Ex Parte Kearney, 7 Wheaton, 38. It is not intended to intimate that the judge acted corruptly in this case; but, even if that be conceded, it would afford no reason why the authority of the court to punish for contempts should be destroyed. This is a shield and protection for the judiciary, which, in its turn, becomes a safeguard to all.