**Ex parte Ronald Paul SALFEN, Appellant.**

**No. 67886.**

Court of Criminal Appeals of Texas, En Banc.

July 15, 1981.

James M. Stewart, Dallas, William H. Jouette, McKinney, for appellant.

Tom O'Connell, Dist. Atty., Bill Schultz, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is a direct application to this Court for the issuance of a writ of habeas corpus in which the Relator seeks relief from six judgments of contempt. Since the Court did not have authority to render the *particular judgments entered* relief will be granted.

On April 29, 1981, the Relator was a witness in a habeas corpus proceeding for the reduction of the appearance bond of Maud Thea Grau Williams. Williams was charged with a criminal offense in Cause No. F–81–198–R in the 199th District Court of Collin County.

The judgments of contempt are identical except for the recitation of a different question asked of the Relator. One of the judgments provides, in part:

"Be it remembered that on the 29th day of April, 1981, while this Court was in session, and a judicial hearing was in progress on the Motion of Defendant herein, Maud Thea Grau Williams, for a Writ of Habeas Corpus, or in the alternative, for a Reduction in the Amount of Bond, Ron Salfen was called and sworn as a witness to testify on behalf of the said Maud Thea Grau Williams, and thereupon the said Ron Salfen was asked on cross-examination by the attorney for the State of Texas the following question:

"'Have you discussed it in any capacity whether or not she would run off?'

"Whereupon the said Ron Salfen refused to answer the said question. The undersigned Judge of this Court then ordered the said Ron Salfen to answer the said question, and he again refused to do so, all within the presence, hearing and observation of the undersigned."

It is clear from the judgments of contempt and from the record that the Relator was not held in contempt for his failure to answer the questions on April 29, 1981. The contempt order continues:

"Thereafter, on the 14th day of May, 1981, the said Ron Salfen again appeared, with counsel, before this Court while the Court was in session and a judicial hearing was in progress to determine whether the said Ron Salfen would answer the aforesaid question and to determine the sufficiency of the bail previously set by the Court for the said Defendant as permitted pursuant to Art. 17.09, § 3 Texas Code Crim. Procedure. The said Ron Salfen was again asked, by the Court, to answer the aforesaid question. Again the said Ron Salfen refused to answer the said question, was ordered by this Court to answer the said question and again refused to answer, all within the presence, hearing and observation of the undersigned.

" . . . .

"The Court thereupon declared the said Ron Salfen to be in contempt of court,

and assessed his punishment at twelve (12) hours confinement in the Collin County Jail and a fine of One Hundred Dollars ($100.00), such punishment to be in addition to any other punishment assessed for other contemptuous act or acts of the said Ron Salfen this date."

The Relator contends that although each of the orders of contempt recites that the May 14 hearing was held "to determine the sufficiency of the bail previously set by the court for said Defendant as permitted pursuant to Art. 17.09, § 3," the record does not support that assertion. We agree.

The transcription of the court reporter's notes of the April 29 hearing contains the following statement made by the trial judge:

"I believe that under the record before the Court at this time the Court has no real alternative except to grant the application which is filed, in the alternative to set a reasonable bond and the Court finds that $150,000 bond in the record is unreasonable and reduces the same to $15,000 and it is ordered that the Defendant be discharged on her bond . . ."

The docket sheet contains the notation that the bond was reduced to $15,000 on April 29, 1981, and a copy of the $15,000 bond entered into by Williams on April 29, 1981, is included in the record.

Although the contempt orders state that the May 14 hearing was held pursuant to Art. 17.09 § 3 to determine the sufficiency of Williams' bond, the docket sheet characterizes the proceeding as "a hearing on contempt." There is no indication in the record that the State moved for a new bond after Williams' bond was reduced on April 29 or that affidavits to reopen the bond proceedings were filed with the court pursuant to Arts. 16.16 or 23.11, V.A.C.C.P. The record, including the transcription of the court reporter's notes, contains no showing that the defendant Williams was given notice, either oral or written, that a subsequent hearing would be held to redetermine the sufficiency of her bond.

The transcription of the court reporter's notes of the May 14 hearing, which is certified to be a "full, true, and correct transcription of said proceedings," contains no indication that on May 14 a redetermination of the sufficiency of Williams' bond was before the court for consideration. The record shows that neither the defendant Williams, her counsel, nor the State, appeared at the May 14 hearing; only the Relator and his attorneys appeared. Nevertheless, the Relator was held in contempt for his failure at the May 14 proceeding to answer six questions then propounded to him by the court. The following exchange took place between the Relator and the court at the May 14 hearing concerning the first question:

"THE COURT: Reverend Salfen, do you recall on April 29, 1981 Mr. Schultz was questioning you on cross-examination and he asked you: 'Have you discussed it in any capacity whether or not she would run off?' Do you recall that?

"THE WITNESS: Yes, I recall the question.

"THE COURT: What is your answer?

"THE WITNESS: I answered that I—

"THE COURT: No, sir. *What is your answer right now?*

"THE WITNESS: My answer is that the conversation was—. . . I must invoke the privilege, Your Honor.

"THE COURT: You're refusing to answer the question?

"THE WITNESS: Respectfully.

"THE COURT: The Court orders you to answer the question 'Have you discussed it in any capacity whether or not she would run off?'

"THE WITNESS: I'm sorry, Your Honor, I cannot.

"THE COURT: Very well, sir, the Court declares that the witness before the Court, Ron Salfen, is in contempt and assesses his punishment at . . ."

[emphasis supplied.] This exchange is representative of those which occurred con-

cerning the other five questions. The orders and the record show the Relator was held in contempt for his refusal to answer the court's questions on May 14, not for his refusal to answer the questions on April 29.

■ Before a court may hold a witness in contempt, three things are necessary:

"(1) Jurisdiction of the subject-matter; (2) jurisdiction of the person; and (3) *authority of the court to render the particular judgment.*"

[emphasis supplied.] *Ex parte Duncan*, 127 Tex. 507, 95 S.W.2d 675, 679 (1936). *Ex parte Britton*, 127 Tex. 85, 92 S.W.2d 224 (1936); *Ex parte Duncan*, 42 Tex.Cr.R. 661, 62 S.W. 758 (1901).

*Ex parte Degener*, 30 Tex.App. 566, 17 S.W. 1111 (1891) reviewed a Court's authority to examine a contempt order pursuant to habeas corpus:

" '[J]urisdiction of the person and of the subject matter are not conclusive; but the jurisdiction of the court *to render the particular judgment in question* is a proper subject of inquiry. If any of these three elements are lacking, the judgment is fatally defective, and the prisoner held under it may be released on habeas corpus.' [citations omitted.]"

[emphasis supplied.] Also, the scope of review under a habeas corpus statute almost identical to Art. 11.23, V.A.C.C.P., which is presently in effect, was discussed:

"This statute is certainly very broad and comprehensive in terms. It does not limit the application of the writ to an inquiry merely into the lawful right of the person exercising the power to commit one restrained of his liberty; but even where such power exists the manner or degree in which it is exercised is equally a subject-matter embraced in proceedings under the writ. If we can inquire into 'the manner or degree,' as well as the exercise of the power to confine and constrain by virtue of this writ, then it *seems clear that we are empowered to determine whether or not the court had jurisdiction to render the particular judgment which it has rendered in the case, or whether in fact the particular matter upon which its judgment is based was or was not such contempt as authorized the parties to be imprisoned therefor.*"

[emphasis supplied.] Similarly, the Court in *Goodfellow v. State*, 53 Tex.Cr.R. 471, 110 S.W. 755 (Tex.Cr.App.1908) said:

"*Ex parte Duncan*, 42 Tex.Cr.R. 661, 62 S.W. 758, follows the doctrine laid down in the cases already cited, and emphasizes the proposition that the jurisdiction of the court must not only be of the person and subject matter, but it must go further, *and the authority must be such as to authorize the court rendering the judgment to render it in the matter which is the subject of inquiry, and if, upon a review of the whole record, it should appear that the judgment is unwarranted by law, the party upon whom the contempt punishment is sought to be inflicted will be discharged.* Such was not always the law under the decisions, but such is the more humane rule, and one that has become settled in this state."

[emphasis supplied.]

With these principles in mind, we will discuss their application in the present case. The habeas corpus hearing of April 29 terminated in the court reducing Williams' bail from $150,000 to $15,000. The setting of bail was res judicata. *Augustine v. State*, 33 Tex.Cr.R. 1, 23 S.W. 689 (1893); *Jenkins v. State*, 45 Tex.Cr.R. 253, 76 S.W. 464 (1903); *Korn v. State*, 400 S.W.2d 564 (Tex. Cr.App.1966). Williams made her bond and was released.

The Relator was orally summoned to appear before the court for the May 14 hearing. Although the contempt orders recite that the Relator's answers were on May 14 "necessary to a proper administration of justice" and that the Relator's failure to answer "interrupt[ed] the orderly administration of justice, interfer[ed] with the pursuit and finding of truth, and disrupt[ed] the proper functioning of the Court in its decision making duties," the record fails to

show that Williams or the State was before the court on that day to determine whether Williams' bail was to be modified. On the contrary, the docket sheet and the record show that only the Relator and his counsel were before the court and that the sole purpose of the hearing was to propound the six questions to the Relator.

 The essence of contempt is that the conduct obstructs, or tends to obstruct, the proper administration of justice. The refusal to answer questions which are not properly within the authority of the court to ask does not obstruct the administration of justice and is therefore not contemptuous. See and compare, *Ex parte McMurrough*, 390 S.W.2d 2 (Tex.Cr.App.1965); *Ex parte Duncan*, 42 Tex.Cr.R. 661, 62 S.W. 758 (1901); *Ex parte Degener*, supra. In the present case the court did not have the authority at the May 14 hearing to propound the questions which he did to the Relator or to order the Relator to answer the questions, since the "subject of inquiry" before the court on that day was not to determine the sufficiency of Williams' bond. Absent such authority, the Relator's refusal to answer the questions was not contemptuous. We conclude that the court did not have the authority to render the particular judgments which it rendered in this case. The judgments are thus unwarranted by law, and the Relator is entitled to the relief sought.

It is well-settled that the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised. See *United States v. International Union United Auto, Aircraft and Agr. Implement Workers of America*, 352 U.S. 567, 77 S.Ct. 529, 1 L.Ed.2d 563, reh. den. 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 763 (1957); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion), and cases there cited; *Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); *San Antonio General Drivers, Helpers Local No. 657 v. Thornton*, 156 Tex. 641, 299 S.W.2d 911 (Tex.1957); *Taylor v. State*, 172 Tex.Cr.R. 461, 358 S.W.2d 124 (Tex.Cr.App.1962). Therefore, under the well established rules of construction, we should not and we will not in this case determine the questions raised concerning the constitutionality of the statute providing for clergyman-penitent privilege, Art. 3715a, V.A.C.S. (Supp.1981), or other constitutional questions suggested.

The relief sought will be granted. It is so ordered.