**CITY OF HURST, Appellant,**

v.

**CITY OF COLLEYVILLE et al., Appellees.**

**CITY OF COLLEYVILLE et al.,
Appellants,**

v.

**CITY OF HURST et al., Appellees.**

Nos. 17434, 17435.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 12, 1973.

Rehearing Denied Nov. 16, 1973.

Wilbur T. Knape, Bedford, for appellants City of Colleyville and others.

Saner, Jack, Sallinger & Nichols, Dallas, and George A. Staples, Jr., Hurst, for appellee, City of Hurst.

S. G. Johndroe, Jr., City Atty., and John F. Gray, Asst. City Atty., Fort Worth, for appellee, City of Fort Worth.

## OPINION

MASSEY, Chief Justice.

Appeals, separately docketed in this court because appeals of both City of Hurst and City of Colleyville were brought at different times, were from a single adverse judgment in a case brought in the trial court by the City of Hurst. By order of this court the cases are consolidated and reduced to the singular for purposes of appeal as it had been in the trial court.

We reverse the judgment and remand the case.

Though no issue of law determined in State ex Rel. Ratcliff v. City of Hurst, 458 S.W.2d 696 (Fort Worth, Tex.Civ.App., 1970, writ ref., n. r. e.) is controlling in the instant appeal, a cursory examination thereof furnishes the background of the dispute which culminated in the filing of the case in a District Court of Tarrant County, Texas. Because of the opinion in such cited case Hurst decided to and did file suit under the provisions of pertinent portion of Vernon's Ann.Tex.Civ.St. Art. 970a, Texas Municipal Annexation Act, to— within the particular area defined by its pleadings—have the court judicially apportion the area to which it was entitled to have exclusive extraterritorial jurisdiction.

To clarify; the propriety of any annexation is not involved in the suit, merely the designation of the boundaries of an area within which Hurst should have the exclusive right to initiate annexation procedure, and like designation for other interested municipalities.

Pertinent provisions of Art. 970a Sec. 3, subd. B provide, as follows: " . . . any city having an extraterritorial claim to such overlapping area shall have authority to file a plaintiff's petition in the district court of a judicial district, within which is located the largest city having an extraterritorial claim to such overlapped area, naming as parties defendant all cities having a claim to such overlapped area and praying that such overlapped area, to which it has mutual claim, *be apportioned among the cities concerned.* In effecting such apportionment, the district court shall consider the population densities and patterns of growth, transportation, topography, and land utilization in the cities concerned and in the overlapped area. *The territory so apportioned to a city shall be contiguous to the extraterritorial jurisdiction of such city.* In the event the extraterritorial jurisdiction of a city is totally overlapped, the territory so apportioned to such city shall be contiguous to the corporate boundaries of such city. Such territory so apportioned shall be in a substantially compact shape. *Such overlapped area shall be apportioned among such cities in the same ratio (to one decimal) as the respective populations of the cities concerned bear to one another,* but in such apportionment no city shall receive less than one-tenth (1/10) of such overlapping area. . . ." (Emphasis supplied.)

Hurst's suit joined all appropriate municipalities. By disclaimer, etc., the real adversaries became Hurst and the City of Colleyville. The City of Fort Worth remained as a party to the suit, but all it wanted it obtained by the judgment provision, as follows, viz: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that, although the claims by the City of Fort Worth of extraterritorial jurisdiction to a portion of the land in controversy under Ordinance No. 4075, duly and legally adopted on July 15, 1963, are herein recognized, no portion of such land shall be apportioned, under the provisions of Article 970a of Vernon's Revised Civil Statutes, to the City of Fort Worth."

Joining the City of Colleyville in its contentions, including the contention that the land sought to be effected under the plea of Hurst was not subject to its extraterritorial claim, were B. B. Allgood and ten other interested property owners in the area.

Essentially the dispute is between Hurst and the City of Colleyville. There was a parcel of the area awarded to Hurst which was without the extraterritorial jurisdiction of Colleyville, but within the extraterritorial jurisdiction of Hurst and the City of Fort Worth. Therefore this particular parcel, not specified as to metes and bounds by the judgment of the trial court, would not be subject of the persisting dispute between Hurst and Colleyville. There was another parcel of the area in question (in the northwest quarter) which was without the extraterritorial jurisdiction of the City of Colleyville, but within the extraterritorial jurisdiction of Hurst and the City of Fort Worth (claim of Hurst to which was not resisted by the City of Fort Worth), which was by the judgment of the trial court awarded to Colleyville. Neither do we find it specified as to metes and bounds by the judgment.

This last mentioned parcel of land was awarded to the City of Colleyville despite the fact that Hurst sought to obtain it and despite the fact that it lay within the extraterritorial jurisdiction of Hurst and the City of Fort Worth but not that of Colleyville. As to the apportionment thereof to the City of Colleyville Fort Worth has made no objection, though Hurst objects. Such land parcel was "contiguous" to land which fell within the extraterritorial jurisdiction of Colleyville, and under one view of Art. 970a it might be said to have been such as was authorized to be apportioned to Colleyville by the judgment of the trial court. See language already copied from the statute, viz: ". . . The territory so apportioned to a city shall be contiguous to the extraterritorial jurisdiction of such city."

By application of principles of statutory construction we hold that in this particular instance and sentence within the body of the statute—consideration given to the manifest intent of the Legislature evidenced from its concern with "overlapping" of municipal extraterritorial jurisdiction—that it does *not* in the apportionment

contemplated by Art. 970a authorize a trial court to award to a municipality any extraterritorial jurisdiction over land which at the time of trial was located without and beyond the limits of its existent extraterritorial jurisdiction. Therefore the award made to the City of Colleyville constituted reversible error of which Hurst was entitled to complain.

The population of the City of Fort Worth was such that its extraterritorial jurisdiction included the majority of the area in question. The population of the City of Hurst was such that its extraterritorial jurisdiction included the whole of the area in question. The population of the City of Colleyville was less than 5,000, and as such, by Art. 970a, Sec. 3, subd. A(1), its extraterritorial jurisdiction was the contiguous unincorporated area, not a part of any other city, within one-half (½) mile of its corporate limits. By the limiting provisions of this section of the statute application of the limitations of distance to the ground of that area to which Hurst sought an apportionment demonstrated that the two land parcels previously mentioned lay without the extraterritorial jurisdiction of Colleyville as existent immediately prior to the institution of Hurst's suit.

■ By application of the pertinent provisions of Art. 970a, Sec. 3, subd. B to the acreage proper to be awarded to Colleyville as its extraterritorial jurisdiction within the disputed area because of the comparative populations of Colleyville and Hurst (shown as 3,368 and 26,810, respectively), it becomes evident that the area awarded to Colleyville was greater than one-fourth of the entire amount of land in controversy. It follows that the award to Colleyville was in excess of that percentage authorized by the statute. By quotation already made we emphasized words taken from Art. 970a, Sec. 3, subd. B, as follows: "Such overlapped area shall be apportioned among such cities in the same ratio (to one decimal) as the respective populations of the cities concerned bear to one another, . . . ."

By dictum from League City v. City of Clear Lake Shores, 460 S.W.2d 522 (Houston (14th) Tex.Civ.App., 1970, no writ history) violence was done to the mathematical ratio provided by Art. 970a, Sec. 3, subd. B in ignoring the statutory guide lines set forth therein. Hence reversible error exists.

At a preliminary hearing of the cause on February 7, 1972 pursuant to an agreement by counsel then representing Colleyville, and the then counsel for the intervenors, B. B. Allgood and others, County Surveyor R. D. Hayes was instructed by them to survey a portion of the total area sought to be apportioned. On this there was no order of the court. At the time no .one seemed to have been careful in any procedural respect. Mr. Hayes did the work directed.

■■ Afterward Hayes submitted a bill for one amount to the City of Hurst, and submitted a bill for another amount to the City of Colleyville according to his understanding of which municipality was to pay him for specific work, consideration given to an apportionment of his charges for work both cities requested. In connection with the trial from which the appeal was taken a hearing was ordered by the court upon which it appeared that nothing done by Mr. Hayes was by any preliminary order of the court, but only by direction from counsel. Nevertheless the trial court, by its judgment charged an amount against the City of Hurst as costs, which amount was a portion of the total charge Hayes believed to be his entitlement. However, at no time was Mr. Hayes ever made a party to this lawsuit. Neither is he a party on appeal. If Hayes had been allowed less than he deemed proper he would not have been entitled to appeal as the surveyor did in Metcalfe v. McCarty, 301 S.W.2d 263 (Austin, Tex.Civ.App., 1957, no writ history). In that case Metcalfe had been brought into the case by order of the court appointing him and directing his services, which were· thereafter performed. Here

there was no such order of the court. A court acts by and through its orders and not otherwise. Here Mr. Hayes must be treated as having performed services in the case unrelated to any court responsibility therefor and therefore, absent agreement to the contrary by the parties, his charges for the service would not be chargeable as costs.

We have referred to the Rules of Civil Procedure applicable to costs, and to the taxation of costs. Texas Rules of Civil Procedure 141, "Court May Otherwise Adjudge Costs," provides that the court should state reason by the record when he shall adjudge the costs otherwise than by law or the Rules. No such reason appears in the judgment. There is reversible error in respect to costs for that reason as well.

Furthermore, if Hayes was in fact appointed by the court with agreement of the parties, Hurst and Colleyville, and all he did properly deemed as directed by the court the allocation of the expense thereof in the costs adjudication was no doubt affected by the apportionment percentages deemed appropriate by the trial court. Our holding is that there was error in apportionment so it follows` as a matter of course that there was error in the allocation of costs.

■ Correctly anticipating our decision upon its own appeal the City of Hurst insists that this court could make a correct apportionment under Art. 970a, obviating a new trial on the issue of the apportionment proper to be made. Our holding is that in a case such as this we are without authority to make the apportionment. Configuration of the parcel or parcels of land in which extraterritorial jurisdiction for annexation purposes is to be vested in one municipality or the other is within the exclusive province of the District Court.

As is to be observed by what is already written the appeal of Hurst is essentially a complaint that the trial court did not give it as much as its entitlement; from an ex-

amination of the appeal of the City of Colleyville it is found, in essence, to be a complaint that Hurst was ·given anything at all. We have concluded that Colleyville's points of error are without merit. Some are unnecessary to discuss in view of the requirement of another trial; a few will be briefly written upon.

It is Colleyville's position that despite the fact that Hurst *prima facie* established its status and authority to bring the suit as a Home Rule City by pleadings and by introducing its charter and the Certificate of the Secretary of State there is no evidence in the record that the City Charter of Hurst was legally adopted. Colleyville's theory is that since certain ordinances relied upon by Hurst in this case have been declared null and void by a judgment not appealed from and become final, styled State Ex Rel. W. C. Braswell v. City of Hurst, a burden to make additional proof became incumbent upon Hurst which it did not discharge.

On this Hurst insists that the judgment referred to was interlocutory and not final, and that the final judgment in the case specifically declared that Hurst was a validly existing Home Rule City. In any event, and we agree, Hurst points out that since its incorporation as a Home Rule City was in 1956, subsequent Legislative Acts (1174a–4, 1174a–5, 1174a–6, and 1174a–8) have validated its status and incorporation, and that this cured any defects in the original proceedings to make it such. Further, and we agree, that Colleyville's contention amounts to a collateral attack upon matter which could only be raised in a *quo warranto* proceeding. 39 Tex.Jur.2d, p. 408, "Municipal Corporations", Sec. 58, "Challenging corporate existence—Collateral attack".

Hurst's city-limit and contiguity were properly established by official maps and its population by the Federal census figures.

There was earlier dispute existent between Colleyville and Hurst. By an agreed judgment entered into to dispose of issues then existent between them as of May 29, 1963 (in a case where the State of Texas became a party upon relation of Hurst and so converted the case into one in *quo warranto* in so far as necessity existed, but which case was styled Town of Colleyville, Texas v. City of Hurst, Texas, docketed as No. 21672–C in the 48th Judicial District Court of Tarrant County) the city limits of the then Town of Colleyville was outlined by metes and bounds. Certain antecedent annexation ordinances which purportedly enlarged, or effected an enlargement or extension of Colleyville's city limits were thereby nullified by that judgment if involved at all. Here, the instant case not being a *quo warranto* proceeding and any complaint of the adjudication by such 1963 judgment necessarily constituting a mere collateral attack the trial court was bound by the provisions of such judgment upon its presentment in evidence. The antecedent annexation ordinances were properly disregarded. Since no Colleyville annexation ordinance was proved subsequent to the 1963 judgment the trial court did not err in accepting such as establishing the municipal boundaries of Colleyville.

Nothing in State Ex Rel. Ratcliff v. City of Hurst, 458 S.W.2d 696 (Fort Worth Tex.Civ.App., 1970, writ ref., n. r. e.) in any way affected the proper disposition of the instant case. Further, any stipulations which might have been made in that case would have no effect in this, nor would exhibits which might have been admitted without objection upon the trial of that case have thereby attained any greater dignity as evidence upon attempt to introduce the same exhibits on the trial in this case.

Our holding is that the City of Hurst has demonstrated reversible error affecting its interests entitling it to have the judgment of the trial court reversed and the cause remanded for another trial but that

the City of Colleyville has not demonstrated any reversible error affecting its interests. Reversal, however, necessitates a retrial at which all who were parties at the earlier trial remain in the case.

Judgment is reversed and remanded.