**Ex parte Randy TAYLOR.**

**No. 70788.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 20, 1989.

Ronald Goranson, Dallas, E.G. "Gerry" Morris, Austin, for appellant.

Daryl Coffey, Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an original habeas corpus action. Applicant is a Dallas attorney who was defense counsel in a case being tried before the Honorable L. Clifford Davis, Judge of Criminal District Court Number Two of Tarrant County, Texas in November 1987. The Honorable Harry Hopkins adjudged applicant guilty of contempt of court on August 12, 1988. See Government Code Section 21.002(d). Punishment was assessed at twelve (12) hours in the County Jail of Tarrant County and a fine of $500.00. Applicant prays that this Court grant his writ and discharge him from the aforementioned restraint. We will grant applicant's writ.

The applicable facts from trial are these. During the trial of William David Tinney, in which applicant was defense attorney, the credibility of a State's witness came into question. That witness had allegedly forged a deal with the State in return for testimony against Tinney. Defense coun-

sel attempted to explore this deal with Officer Ron Hale, who was on the stand. At that time the court ordered that it would permit the following:

"Okay. I am going permit [sic] testimony limited to showing whether or not this officer or any other officer working with him that he has the knowledge, personal knowledge, made some kind of, to use your terms, cut slack with the accused [sic—refers to informant, not accused] for whatever cooperation he did or to act as an informant. I am going to limit your examination to that extent."

At this point both the State and the defense asked for clarification [which comes as no surprise to this Court]. The trial court went on to say

"I will permit you to show, if you can, that this officer or someone working with him and about which he has personal knowledge, quote, cut some slack, or worked an arrangement for the witness Hill to act as an informant. You can show that. The specific acts, behavior, conduct that he did, we will not."

Questioning of Officer Hale continued, and when the testimony got into the area of the deal that was struck an objection was raised by the State. Several pages of trial transcript are devoted to applicant expressing confusion with the court's order and the court attempting to clarify. The following is a portion of what transpired.

COURT: I told you a while ago, clearly, that you could identify those as misdemeanor or what class of felony cases they were, and the term heavy cases was your term that I used. The term, cut some slack, was your term that I used to be certain that I was using your language.

MR. TAYLOR: Now when I identify it as a felony case, can I ask him to designate under your ruling in the presence of the jury, was it a felony theft case as opposed to a felony murder case or robbery case?

COURT: No sir. You may ask him if it were a felony case, if it were a whatever other kind of case you say that he had pending, that he worked some kind of—

that this officer or somebody working with him cut him some slack in.

Later in the testimony of Officer Hale, regarding the mechanics of how the deal came about, the following transpired:

MR. TAYLOR: Tell the jury what you said to Hill.

OFFICER HALE: Okay. After I had talked with the Balch Springs Police Department, I had learned that, that there was a—

MR. WHITE (STATE): I'm going to object to him testifying as to what he learned. I believe he is not being responsive to the question. I believe he asked him what he said to Hill. Nonresponsive.

COURT: I'll sustain.

MR. TAYLOR: Without saying what you had learned, tell the jury what you said to Hill after you had talked to him.

OFFICER HALE: I talked to him and asked him about the origin of the tapes.

MR. TAYLOR: And what was Hill's response?

OFFICER HALE: He was at first reluctant to talk about the tape at all.

MR. TAYLOR: What did you respond to him when he was reluctant to talk to you about the tapes?

OFFICER HALE: That I thought they might have been obtained illegally and that I would like to know if he had any knowledge of obtaining.

MR. TAYLOR: Did you confront Hill with the method of illegally obtaining those tapes that you thought had occurred?

OFFICER HALE: Yes, I did.

MR. TAYLOR: What was that?

OFFICER HALE: Okay, I ... *the tapes were allegedly obtained through a robbery.* [emphasis supplied].

MR. WHITE: I'm going to object to that, Your Honor. I believe he's familiar with the Court's instructions and I'm going to object to the witness's violation of them.

State's objection was to the witness's answer, not applicant's question.

The amended show cause order states that applicant did knowingly, intentionally,

deliberately, and willfully violate the specific instructions of the court prohibiting applicant from injecting the details of any alleged offenses by Jackie Hill, by eliciting from witness Officer Ron Hale the following testimony, to wit:

> MR. TAYLOR: Did you confront Hill with the method of illegally obtaining those tapes that you thought had occurred?
>
> OFFICER HALE: Yes, I did.
>
> MR. TAYLOR: What was that?
>
> OFFICER HALE: Okay, I ... the tapes were allegedly obtained through a robbery.

 We believe Officer Hale's answer was nonresponsive. We further believe that the nonresponsive answer to applicant's question renders the evidence insufficient to support a finding of contempt. Answers should be responsive to the questions asked and witnesses are not permitted to make to the jury voluntary ex parte statements that are not in response to any questions, especially as to facts that are inadmissible. A party will not be held responsible for the unresponsive answers or gratuitous remarks of his witnesses. Tex. Jur.2d, Witnesses; see also *Galveston, Harrisburg and San Antonio Railway Co. v. Harper*, 114 S.W. 1168 (Tex.Civ.App. 1908); *Sauer v. Veltman*, 149 S.W. 706 (Tex.Civ.App.1912); *Walker et ux. v. Dickey*, 98 S.W. 658 (Tex.Civ.App.1906).

Additionally, we are unwilling to hold applicant responsible for asking a question that could just as well have been responsively answered a number of ways without violating the court's order, e.g., by answering that the tapes were allegedly obtained in the commission of a felony (as opposed to "obtained through a robbery"), etc. Officer Hale was an experienced police officer

witness who was on the stand during the above exchanges between applicant and the court. Officer Hale knew or should have known that his testimony referring specifically to robbery was inadmissible. *Johnson v. State*, 660 S.W.2d 536 (Tex.Cr.App. 1983, dissenting opinion by Judge Teague),

> "... I also find that Green, who at the time of trial had been a member of the Department of Public Safety since 1969, and an undercover narcotics officer for approximately three years, knew or should have known not to have given the unresponsive answer he did ...".

*Johnson*, 660 S.W.2d at 539. See also *Richardson v. State*, 379 S.W.2d 913 (Tex. Cr.App.1964). At the very least, we believe it was reasonable for Taylor to assume Hale would answer the question in a manner that Hale knew would not violate the court's order, which Hale had just heard (i.e. trial judge instructed counsel he could use the words felony or 1st degree felony or "heavy case", instead of robbery).

We do not find in the case at bar that the question preceding the answer was calculated to elicit an improper response. The fact that the police officer witness chose to give details not called for by the question and violative of the court's order is not a basis for contempt to be levied upon counsel.[1] The relief sought is granted.

WHITE, J., concurs in the result.

CAMPBELL, Judge, concurring.

While I find that the majority reaches the correct result in this case, it does so on the weakest premise presented in applicant's writ. I would grant relief in this case under Section IV.A. of applicant's writ.

1. The dissenting opinion faults today's majority opinion for attacking the trial court's series of orders as unclear and also faults the opinion for omitting other exchanges in the record that the author of the dissenting opinion believes also violated the court's order. As to the latter contention, we have addressed the written order of contempt entered by the trial court. There are no other grounds upon which the trial court says he held relator in contempt. As to the majority opinion suggesting that the trial court's

order was unclear: Although there is room to disagree about the clarity of the trial court's order (see concurring opinion by Campbell, J.), the majority holding *relies* on the belief that the court's order was eventually specific enough for the police officer witness to have known that he should not have answered the question in the manner in which he did. Thus the majority relies upon, rather than denies, the clarity of the trial court's order.

Under Section IV.A., applicant contends that Respondent fatally and inconsistently ordered him to do two things: (1) Respondent ordered applicant to confine his cross-examination to the showing of an agreement between the police and their informant; (2) later, Respondent told applicant that he could inquire as to whether, as part of an agreement, the police and/or the prosecution agreed to dispose of felonies or misdemeanors pending against the informant, and in connection therewith, could cross-examine the police witness about the "degree" of crimes that were the subject of the agreement.

These instructions are hopelessly confusing on the face of this record. It is well settled that to sentence one to confinement for contempt of a prior court order that the order must be *unequivocal* (my emphasis). *Ex parte Pardon*, 565 S.W.2d 921 (Tex. 1978). *See also Ex parte Gray*, 649 S.W.2d 640 (Tex.Cr.App.1983).

It scarcely matters whether the answer of the witness was responsive to applicant's question, since prior to the asking of the question, Respondent had not issued a clear, unequivocal order the breach of which was actionable in a contempt proceeding.

With these comments, I join only in the judgment of the Court.

BERCHELMANN, Judge, dissenting.

I dissent. The plurality opinion is fundamentally flawed in three respects. First, the plurality improperly characterizes the witness's responsive statement as being unresponsive. Second, the plurality omits from its opinion the fact that the question leading to the prohibited reply was one of at least three violations of the court order, and the product of a lengthy and methodical examination clearly crafted to elicit the reply. Last, the plurality opinion cites snippets of the court's order out of context, thereby suggesting the order was unclear. This eschewal of fact paints a false picture of the circumstances surrounding the contempt action. I write this dissent to set

forth the record in a more complete fashion.

Applicant[1] served as defense counsel in an aggravated robbery trial. During trial, applicant sought to question police officer Ron Hale about police relations with an informant, which ostensibly enabled the police to secure the informant's services in the case against applicant's client. A bone of contention arose when applicant sought to establish the specific details of any offenses for which the informant was indicted. The court, however, would not permit testimony regarding the details or specifics of those cases. The court repeatedly admonished applicant to limit the line of questioning to the **general** nature of the offenses; that is, whether they were misdemeanors or felonies or even the degree of those felonies, and whether they were considered "serious" or "heavy" offenses. Undaunted by the admonishments, applicant repeatedly sought to establish the specific facts underlying the offenses and, as a result, was eventually held in contempt and sentenced to twelve hours confinement in the Tarrant County Jail and a fine of five hundred dollars.

Specifically, applicant was cited for the following exchange:

[TAYLOR] Q. Did you confront [the informant] with the method of illegally obtaining those tapes that you thought had occurred?

[WITNESS] A. Yes, I did.

Q. What was that?

A. Okay. I—The tapes where (sic) allegedly obtained through a robbery.

Applicant raises the following grounds for review: 1) the evidence was insufficient to support a conviction for contempt because the court's order was inconsistent, the offending testimony was unresponsive, and because there was no evidence that applicant's conduct was indignant to the court and interfered with the orderly presentation of the trial, and 2) applicant's state and federal due process rights were violated because the notice of contempt was insufficient. Pursuant to this Court's order, the Honorable Harry Hopkins, pre-

---

1. Applicant is board certified in the areas of criminal, civil trial, and personal injury law.

siding judge over the contempt hearing,[2] and the Honorable L. Clifford Davis, offended judge, entered responses, findings of fact and conclusions of law. These were in all respects adverse to applicant.

First, the plurality opinion implies that the trial court's order was unclear. This contention is not supported by the record. In truth, several pages of the record are devoted to the trial court's order delineating, in painstaking detail, the areas into which applicant could question. At the repeated behest of applicant, the court clarified that permissible areas of questioning included any deals between the police and the informant, whether cases were pending against the informant, whether cases were dismissed in order to acquire the informant's services, and whether the cases were felonies or misdemeanors or even the degree or class of any offense. However, the court unequivocally refused to permit any specifics of the cases against the informant. After applicant asked a question which arguably invited information regarding the specifics of the informant's offense, the trial court again warned applicant. Outside the presence of the jury, the court repeated again and again the limitations of examination. At that point, the following colloquy took place.

> THE COURT: I told you a while ago, clearly, that you could identify those as misdemeanor or what class of felony cases they were, and the term heavy cases was your term that I used. The term, cut some slack, was your term that I used to be certain that I was using your language.
>
> MR. TAYLOR: Now when I identify it as a felony case, can I ask him to designate under your ruling in the presence of the jury, was it a felony theft case as opposed to a felony murder case or robbery case?
>
> THE COURT: No, sir. You may ask him if it were a felony case, if it were a whatever other kind of case you say that he had pending, that he worked some

kind of—that this officer or somebody working with him cut him some slack in.

> MR. TAYLOR: But I can't go any further than identify the second case as a felony case?
>
> THE COURT: Well, you can't if you intend to follow my instructions. If you don't follow my instructions something is going to happen to you.
>
> MR. TAYLOR: Well, I intend to follow your instructions because I'm going to make a Bill of Exception to preserve where I think your instructions are wrong. But that's what we've got Appellate Courts for.
>
> THE COURT: That's exactly why I'm telling you to make your Bill and move on.
>
> MR. TAYLOR: I'm not trying to argue you into changing your mind, but I just didn't understand that I was not at least entitled to identify the type of felony.
>
> THE COURT: Okay. I'll go over it with you again just in case you did not understand. You may show that he had cases pending. In connection with that you may show whether they are, as you call them, heavy cases, misdemeanors or felonies, or even the degree of those cases. You may show that this officer or someone working with him cut a deal with the witness, and in connection with cutting the deal, to use your term, he cut some slack. You may also elicit testimony that the witness, Hill, did, in response to that slack you had cut him permit—he did do some of what you call informant's work. That's it. And don't cross the line. That's it.

Despite the plurality's characterization to the contrary, I believe that the trial court's order was sufficiently clear.

Next, the plurality finds that applicant cannot be held in contempt for the witness's unresponsive reply. I cannot agree that the witness's remark was unresponsive. A reply is unresponsive if it "goes beyond the scope of the question." 3 Wigmore, Wigmore on Evidence § 785 (3d ed.). For example, where a police offi-

**2.** Judge Hopkins was appointed by Honorable Charles Murray, presiding Judge of the Eighth Administration Judicial District. See Tex. Gov't Code Ann § 21.002.

cer witness is asked, "What happened to the money?" and the officer replies that the defendant stated "Well, I guess you've got me now," the reply is unresponsive to the question. See *Gremmel v. State*, 169 Tex.Crim. 508, 335 S.W.2d 614 (1960).

The questioning for which applicant was cited, "Did you confront [the informant] with the method of illegally obtaining those tapes that you thought had occurred? ... What was that?", was clearly designed to obtain the answer given. Moreover, a review of the record reflects that the testimony was the product of applicant's lengthy and methodical attempt to acquire the prohibited information. When read in context, it is a farse to suggest that applicant was unaware of what the witness would respond. Shortly **before** the information was elicited, applicant, himself, interjected the prohibited information by asking, "[D]id you have a belief as to whether or not after that point in time that an **aggravated robbery** had occurred?" Because applicant's question clearly violated the court's order, an objection was registered and the jury was instructed to disregard. After eliciting the response which forms the basis of the instant contempt action, applicant again violated the order yet a third time, despite repeated and specific warnings. Read in the context of the record, it is clear that applicant's question violated the court's order.

The repeated violation of the court's order belies the plurality's inference that applicant was the innocent benefactor of the response. In *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App.1975), this Court was faced with a similar situation. Irrelevant testimony was elicited that the defendant was seen in public with a prostitute. After the jury was instructed to disregard the testimony, the prosecutor again elicited testimony regarding the woman's profession. This Court held that even if the first reference to the woman's profession was "an accidental result of an unresponsive answer, the renewed question cannot be characterized as such." *Koller*, 518 S.W.2d at 377. In the case at bar, applicant repeatedly violated the court's order. I believe it important to note that the violation for which appellant was held in contempt followed numerous flagrant violations of the court's order and repeated admonishments from the trial court.

Furthermore, applicant's conduct was indignant to and interfered with the orderly presentation and conduct of the trial. The essence of "contempt" is that the conduct obstructs or tends to obstruct the proper administration of justice. *Ex parte Jacobs*, 664 S.W.2d 360, 364 (Tex.Cr.App.1984); *Ex parte Salfen*, 618 S.W.2d 766, 770 (Tex.Cr. App.1981). Acceding to applicant's numerous requests, the trial court repeatedly held conferences outside the presence of the jury in order to thoroughly and explicitly define the limits of questioning. After which, applicant flagrantly and repeatedly violated the court's order. Applicant's utter disregard for the court's order is chronicled in scores of pages of the record. Applicant repeatedly disrupted the orderly progress of the trial and obstructed the administration of justice. Contrast, *Ex parte Pink*, 746 S.W.2d 758 (Tex.Cr.App. 1988) (where counsel's statement to a police officer witness "in that offense report you got, that I can't get to ...", did not obstruct the administration of justice).

For these reasons, I respectfully dissent to the plurality opinion.

McCORMICK, P.J., and DAVIS, J., join this opinion.