**Wilbert LEE, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 191–88.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 28, 1990.

---

Ronald S. Gutierrez, Austin, for appellant.

Ken Oden, Dist. Atty., Alia Moses, Asst. County Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

Before the Court en banc.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted in a bench trial on his plea of nolo contendere of the offense of violating a court order and was sentenced to a term of 180 days in the county jail. V.T.C.A. Penal Code, § 25.08. He appealed on the basis the trial court improperly denied his motion to dismiss the information filed against him. The Court of Appeals agreed the order was invalid because it contained no language commanding or directing appellant to obey its provisions. The conviction was reversed and the judgment reformed to reflect a judgment of acquittal for the offense. *Lee v. State*, 742 S.W.2d 80 (Tex.App.—Austin 1987). We granted the State's Petition for Discretionary Review to determine whether in this case of first impression the appeals court correctly decided the conviction was based upon an invalid court order. Tex.R. App.P. 200(c)(2).[1] After further review, we will reverse the judgment below.

On April 17, 1986, appellant signed an agreed protective order in which it was specified, *inter alia*, that appellant was not to go within two hundred yards of certain locations where his former wife worked or resided. On May 20, 1986, appellant was arrested and charged with violating § 25.08 of the Penal Code.[2] The information charged appellant did then and there "go to (former wife's residence), when he knew it was in violation of Protective Order cause number # 142073 issued by Judge Russell in County Court II on April 17, 1986...." Appellant filed a motion to dismiss, alleging the agreed protective order was invalid because it "nowhere orders, decrees, adjudges, or otherwise directs Defendant to not go to complainant's residence." In a trial memorandum, the State succinctly set out the issue as being "whether a written agreement by the parties in a protective order suit, wherein the items of agreement do not begin with language of order or decree, is enforceable by criminal sanctions." The State initially noted the dearth of case law construing § 71.12 of the Family Code,[3] then argued that civil caselaw requiring a specific order or command to

---

1. The State argues in three interrelated grounds for review that (1) appellant's conviction was based upon a valid and enforceable protective order; (2) The appeals court erred in finding the protective order did not contain "command" language; and (3) appellant was convicted pursuant to the mandates of a penal statute and not pursuant to the mandates of the order. We shall address these grounds together.

2. V.T.C.A. Penal Code, § 25.08, as it existed at the time the agreed order was entered and violated, read in pertinent part:
   (a) a person commits an offense if, in violation of an order issued under ... Section 71.11, or Section 71.12, Family Code, he knowingly or intentionally:
   (1) commits family violence;
   (2) directly communicates with a member of the family or household in a threatening or harassing manner; or
   (3) goes to or near the residence or place of employment or business of a member of the family or household as specifically described in the protective order.

3. Section 71.12 provides that two or more parties to a proceeding may agree in writing, subject to the approval of the court, to do or refrain from doing any of a number of enumerated acts set out in the preceding section, § 71.11. The court may then approve any or all of the agreement, which will in turn become part of the order.

comply with an agreement is not dispositive of the issue as it relates to criminal enforcement since the statute enabling an agreement to be incorporated into a civil decree contains a specific requirement the "parties shall be ordered to perform" it. *See* TEX.FAM.CODE ANN. § 14.06(c). Section 25.08, on the other hand, contains no such language requiring an agreed protective order be reasserted in "command" form. The State concluded by pointing out the distinction is logically based on the fact that every protective order issued under Chapter 71 is required to have certain warnings printed in bold-faced type or in capital letters.[4] The order in the instant case contained both warnings.

██ A comparison of the objectives underlying each form of punishment demonstrates the distinction which may be drawn between the civil and criminal proceedings. The object of the misbehavior is different for civil contempt than for the penal offense created under § 25.08. Civil contempt in Texas is the process by which a court exerts its judicial authority to compel obedience to some order of the court. *Ex parte Padron*, 565 S.W.2d 921 (Tex. 1978); *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976). The essence of contempt is the contemner's conduct obstructs or tends to obstruct the proper administration of justice. *Ex parte Jacobs*, 664 S.W.2d 360 (Tex.Cr.App.1984); and *Ex parte Salfen*, 618 S.W.2d 766 (Tex.Cr.App.1981). One who is committed to jail for civil contempt should be able to find somewhere in the record the written order, which must specifically "command" or "order" an individu-

al to do or not to do some act or acts. *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967).

█ The effect of the Court of Appeals' ruling is that a conviction under § 25.08 will not stand if the court order allegedly violated does not contain "command" language. Such a result is valid only if the same standard of judging sufficiency in both a civil order and under § 25.08 of the Penal Code is to be employed. It is well settled that to sentence an individual to confinement for *contempt of a prior court order*, the order must be "unequivocal to be sufficient." *Ex parte Taylor*, 777 S.W.2d 98 (Tex.Cr.App.1989); *Ex parte Slavin*, supra. A court cannot punish someone for *contempt* of an order which did not command him to do or not to do some specific act. *Ex parte Gray*, 649 S.W.2d 640 (Tex.Cr.App.1983). This standard for reviewing sufficiency found in *Slavin* and other civil cases is, interestingly enough, rooted in early caselaw originating from this Court. In *Ex parte Duncan*, 42 Tex.Cr. 661, 62 S.W. 758 (App.1901), an attorney was held in contempt of a court order which appointed him to a committee for the purpose of examining a candidate for admission to the bar. Ultimately finding the order by the trial court to be incomplete and thus unenforceable, Presiding Judge Davidson, writing for the majority, set the litmus test which has been consistently followed by all appellate courts in this state reviewing sufficiency of an order:

The order, to have been the subject of disobedience, must have been complete and perfect within itself. * * * It is the disobedience of the order of the court as rendered and recorded which must con-

---

**4.** The printed warnings were as follows:

A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH.

A VIOLATION OF THIS ORDER BY COMMISSION OF FAMILY VIOLENCE MAY BE A CRIMINAL OFFENSE PUNISHABLE BY A FINE OF AS MUCH AS $2,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR, OR BOTH.

The statute was amended by Acts 1987, 70th Leg., ch. 677, § 7, eff. Sept. 1, 1987, and now more specifically provides in pertinent part:

A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE A MISDEMEANOR PUNISHABLE BY A FINE OF AS MUCH AS $1,000 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY PUNISHABLE BY A FINE OF MORE THAN $1,000 OR BY CONFINEMENT IN JAIL OR PRISION FOR MORE THAN SIX MONTHS, OR BOTH.

stitute the basis of this proceeding. Stress is laid upon this from the fact that it is this order which is first claimed to have first been disobeyed, and which gave rise to the subsequent proceedings. * * * Where the court seeks to punish either by fine, arrest, or imprisonment for the disobedience of an order or command, such order or command must carry with it no uncertainty, and must not be susceptible of different meanings or constructions, but must be in the form of a command, and, when tested by itself, must speak definitely the meaning and purpose of the court in ordering. *Ex parte Duncan*, 62 S.W. at 760. It is clear from the origins of the test that this standard applies solely to acts constituting "disobedience of the order of the court as rendered and recorded". Because it is the disobedience of the inherent authority of the court that is at issue, it follows that a court, before exercising its contempt powers, must have provided the person it seeks to punish with specific and definite notice of those acts which he may or may not perform without the risk of being held in contempt. Where such an order passes muster under the *Duncan* standard, the authority of the court may then be reinforced by a judgment of contempt.

▉ Unlike a civil contempt judgment, § 25.08, supra, is directed toward the *misconduct* proscribed rather than the court's authority to enforce its own order. As appellant points out in his reply brief, § 25.08 represents a separate and distinct offense enacted to provide an alternative or additional method of enforcing orders entered under §§ 3.581, 71.11 and 71.12 of the Family Code. The Legislative purpose underlying the statute is to provide law enforcement personnel with the authority to immediately arrest a violator of a family violence protective order rather than depend solely upon the civil enforcement process of contempt. The public policy consideration forming the basis of the enactment is to remove the perpetrator from the scene and into custody rather than allowing that individual to remain free to commit further violence while awaiting service of citation for show cause or while awaiting trial for

contempt. *See* SENATE JURISPRUDENCE COMM., HEARING ON S.B. 997, 68th Leg. (March 29, 1983). Speaking of the change from the use of indeterminate language in Chapter 71 warning an individual under restraint that a violation of the order "might" constitute an offense, to a more determinate warning that a violation *may be punished* according to a specific range of punishment, one commentator stated:

> This change in the law clarifies the language required in the protective order, but it has a far more important function. It finally provides police the statutory authorization to arrest those who violate a protective order rather than relegating enforcement to contempt proceedings.

Reamey, *Legal Remedial Alternatives For Spouse Abuse in Texas*, 20 HOUS.L.REV. 1279, 1318–19 (1983).

The same author earlier in his article emphasized the necessity for criminal sanctions for acts of spousal abuse as in the instant cause:

> Despite their shortcomings, criminal sanctions remain an essential weapon in the arsenal against spouse abuse. They undeniably deter some abuse and contain the potential to deter more. The severity of the punishment is not paramount; rather, the availability of the substantive law, knowledge of its existence, and the law's swift and decisive application act as the most powerful deterrents. The strength of the criminal law remedy to abuse is determined by its availability in substantive form, the practical use of that law by police, the prosecution of violations, and the judicial disposition of such cases.

*Id.* at 1298–99.

From the above, it is clear that contempt is used to enforce the court's authority to issue a valid order, in this case proscribing certain specified conduct in particular locations. Refusal to obey the order threatens the court's authority and impedes the lawful business of the court. A judgment of contempt against the individual disobeying the valid order acts to reinforce and reestablish the authority of the court to issue

the particular order. Section 25.08 in comparison, presupposes an individual has been statutorily warned as mandated by Chapter 71 that his conduct may result in the State seeking to pursue a criminal misdemeanor conviction. Whereas the notice required for enforcement of other civil orders is one of actual command, *see* § 14.06(c), supra, notice for purposes of criminal responsibility is given by means of the statutory warnings listed under § 71.16 which are provided on the face of the agreed protective order.

■ In the instant case, appellant was not held in contempt of a court order, and we are not called on today to decide the question whether the order was sufficient to support a judgment of contempt. Instead, we must determine whether there exists a valid order under which a criminal prosecution could legitimately be conducted. By analyzing the order in terms of its sufficiency to support a judgment of contempt, the Court of Appeals failed to recognize a different standard is in use to determine sufficiency of alleged culpable conduct than utilized to gauge sufficiency of notice of the court's intent to enforce its own order by contempt.[5] In the agreement entered into by appellant and made a part of the order in this cause, he agreed to refrain from committing specified acts and was specifically informed that failure to do so could result in a contempt citation *or* prosecution for a criminal offense. *See* § 71.16, supra. That appellant could be punished by either or both methods is clearly envisioned in Chapter 71. *See* TEX. FAM.CODE ANN. § 71.19.[6] He was not only given notice of the risk of being charged with a criminal offense, he entered into the agreement which spelled out those acts he was prohibited from doing. Contrary to the dictates of § 14.06 of the Family Code regarding other types of orders, § 25.08 does not require a specific "command" that the party perform or not perform specified activity. The statutory warnings required as part of the protective

order provided adequate notice to appellant of the possible criminal charges. There was no need for "magic command language" since it was not the court's "command" but the culpable conduct appellant had previously agreed not to commit which was the crux of the charge against him. A fair reading of § 25.08 as applied to the facts of the instant case, does not indicate that a successful citation is a prerequisite for a successful prosecution, and we decline to so hold. The Court of Appeals erred in holding the order to be invalid for purposes of providing a basis for criminal prosecution. To hold otherwise would be to frustrate the intent of the Legislature as shown by the language of the statute to punish misbehavior proscribed under Chapter 25 of the Penal Code. The State's grounds for review are sustained.

The judgment of the Court of Appeals is reversed, and the judgment by the trial court is affirmed.

TEAGUE, J, dissents.

MILLER, J, joins with note: Believing that Article 71.12, V.T.C.A. Family Code, in order to facilitate the settlement of cases, creates a separate and distinct "order," as that term is used in V.T.C.A. Penal Code § 25.08, from that contemplated by Article 71.11, V.T.C.A. Family Code, I join the majority opinion. Were this a prosecution under V.T.C.A. Penal Code § 25.08 based on a V.T.C.A. Family Code Article 71.11 order, much of what Judge CLINTON says in his dissent would have merit.

BERCHELMANN and STURNS, JJ, not participating.

CLINTON, Judge, dissenting.

The judgment of the court of appeals is correct; it should be affirmed. Failing that, the petition for discretionary review should be dismissed as improvidently granted.

---

**5.** *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**6.** Section 71.19 provides: "Except as provided by this chapter, the relief and remedies provid-

ed by this chapter are cumulative of other relief and remedies provided by law."

The opinion of the court of appeals advances two reasons for its decision: one, that an agreement between the parties, without more, does not constitute a protective order within contemplation of V.T.C.A. Family Code, § 71.11; two, that "the underlying agreed order must be sufficient to support contempt sanctions before the penal sanctions of [V.T.C.A. Penal Code] § 25.08 are available." *Lee v. State*, 742 S.W.2d 80, at 81–82 (Tex.App.—Austin 1987). If the so-called "Agreed Protective Order" is not a protective order under law, the judgment of the Austin Court is supportable, regardless of sufficiency of the *"agreed protective order."* [1]

A proceeding for a protective order is commenced by filing an application for a protective order by a person entitled under §§ 71.02 and 71.04; certain requisites and procedures are provided, including hearing and findings, §§ 71.04—71.10(a), before the court "may make any *protective order* authorized by this chapter," and apply it to a party to the proceeding who (1) is found to have committed family violence; or (2) has agreed to *the order* under 71.12 of this code," § 71.10(b) and (c).

Section 71.11 prescribes authority for content of *"a protective order,"* subsection (b) of which is pertinent here, *viz:*

"(b) In a protective order *the court may prohibit a party from:*

　(1) * * * *

　(2) * * * *

　3) going to and near the residence or place of employment of a member of the family or household. *The court* shall specifically describe the prohibited locations and the minimum distances therefrom, if any, that the party must maintain unless Section 71.111 of this code applies, in which case, *the court order* need not disclose the place of the protected party's residence."

According to § 71.13(a) such a protective order made under 71.11 is effective for the period specified in the order, not to exceed one year. See generally *Magill v. Shef-*

*field*, 612 S.W.2d 677 (Tex.App.—Dallas 1981) writ refused n.r.e. Within that period upon motion, notice and hearing, the court "may modify a prior *order* to exclude any item included in the prior order or to exclude any item that could have been included in the prior order." § 71.14.

The statutory provisions reviewed *ante* authorize *the court* to make a protective order enjoining a party to do or to refrain from doing acts prescribed in 71.11. Thus a court may *"prohibit* a party" from doing certain of those acts. In that context an order is a command or direction and "should be in the form of a command." 51 Tex.Jur.3d 657 and 658, § 15. Requisites. In this respect a protective order is analogous to an injunction or restraining order, and it is axiomatic that such writ "must *command* the person ... to whom it is directed to desist and refrain from the commission or continuance of the act enjoined," Tex.R.Civ.Pro. 687.

Manifestly the instant "agreed protective order" does not meet the statutorily prescribed requisites of a protective order for *the court* does not in terms *"prohibit"* appellee from doing any act; it does not *"command"* appellant to cease and desist from any act.

The form appears to be the product of an effort to combine an agreement of the parties and findings of the court. However, "an order is an act of the court," *Lindley v. Flores*, 672 S.W.2d 612, at 614 (Tex.App. —Corpus Christi 1984), no writ; "[a] court acts by and through its orders and not otherwise," *City of Hurst v. City of Colleyville*, 501 S.W.2d 140, 143 (Tex.Civ.App. —Fort Worth 1973), writ refused n.r.e. Not only is the form not a protective *order*, also it is violative of § 71.12.

To facilitate settlement of a proceeding for a protective order, § 71.12(a) provides the parties "may *agree in writing*, SUBJECT to the *approval of the court*, to do or refrain from doing any act that the court could order under Section 71.11." Thus there is first a written agreement

**1.** All emphasis is mine throughout this opinion unless otherwise indicated. All references in the following discussion are to sections in the Family Code in effect in April and May 1986 unless otherwise indicated.

made and then presented to the court for consideration.

Thereafter comes action by the court: "If all or part of the agreement is *approved by the court,*" the section mandates, "the part of the agreement approved by the court SHALL BE ATTACHED TO THE PROTECTIVE ORDER and become a part of THE ORDER OF THE COURT." [2]

Accordingly, to comply with § 71.12(a), two instruments must be produced, i.e., a written agreement by the parties and a protective order by the court. And just to remove any possible misunderstanding, § 71.12(b) provides: "The agreement expires when the court order expires."

Therefore, one reason for the decision of the Austin Court of Appeals is correct in law, and on that basis its judgment may be affirmed.

Because the majority do not dismiss the petition as improvidently granted, I respectfully dissent.

---

**2.** There is good reason for requiring a separate protective order: because it determines the issues and terminates this specially provided proceeding, the order is more in the nature of a judgment of the court.